# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## TARDY v. CREASY.

### MARCH 25th, 1886.

COVENANTS—*Personal—Restraint of trade—Case at bar.*—Tolbert conveyed to Tardy five and a-half acres of land at a junction, with exclusive mercantile privileges at, in, and around the junction, including the right to sell goods, wares and merchandise; to keep houses of public entertainment and refreshment; to establish and erect warehouses, factories, foundries and shops on the tract of 368 acres owned by the grantor in and around the junction, with covenants that the grantor would abstain from all sorts of business on said tract, and that the said covenants should apply to his heirs or assigns, who might be deprived of these privileges, and that they should run with the said land of Tolbert to whomsoever it might be devised or conveyed. Later, Tolbert conveyed one acre to Roach, "restricting him from any mercantile privilege, the same having been conveyed to Tardy." Roach conveyed same with general warranty without restriction to Creasy, who established a mercantile business thereon. Tardy enjoined Creasy from selling goods, &c., on said acre, and from trespassing on his rights aforesaid. On demurrer to bill—

HELD *by a majority of the court, Lewis, P., and Fauntleroy, J., dissenting—*

 1. These covenants are personal, binding the grantor.
 2. They do not run with the land so as to bind his assigns.
 3. They are in general restraint of trade, and are void as against public policy.
 4. The bill should be dismissed on demurrer.

Appeal from decree of circuit court of Pittsylvania county, entered December 5, 1883, in a chancery suit wherein A. H. and S. C. Tardy were complainants, and T. C. and R. H.

Creasy were defendants.   The decree being adverse to the complainants, they obtained an appeal to this court.

Opinion states the case.

*John Gilmer* and *E. C. Burks*, for the appellants.

*Green & Miller, George T. Rison,* and *W. W. Gordon,* for the appellees.

LACY, J., delivered the opinion of the court.

The case is as follows: Tolbert conveyed to A. H. Tardy five and one-half acres of land, at the junction of the narrow gauge railroad, with the Washington City, Virginia Midland and Great Western Railroad, between Galveston and Ward's Springs, with general warranty.   The said Tolbert being seised of a tract of three hundred and sixty-eight acres around the said junction, covenanted in the deed with said Tardy, that he was to have the exclusive mercantile privilege, and all rights pertaining thereto, at, in, and around said junction, and agreed to forfeit five hundred dollars for any breach thereof by him.   Subsequently, in 1879, Tolbert, by deed reciting that the aforesaid deed did not fully express the desire and intention of the said parties, and declaring an intention to perfect and carry into effect said desire and intention, conveyed, with general warranty to the said Tardy, "the exclusive right to sell wares, goods and merchandise; to keep houses of public entertainment or refreshment; to establish and erect warehouses, factories, foundries and shops on said tract of five and one-half acres, or on any lands or lots subsequently purchased by said Tardy, or that may hereafter be purchased, or on any part of the lands now owned by said Tolbert at and adjoining said five and one-half-acre tract, which said lands

embrace, by estimate, about 368 acres of land, and is that portion of the lands conveyed to him by E. H. Dillard and wife, which he, said Tolbert, has not hitherto sold. But this deed shall not authorize said Tardy, or his assigns, to erect any house, or to carry on any business on any of said lands, except such as he may have, or may hereafter purchase, although said Tolbert, his heirs or assigns, are hereby deprived of the privileges hereinbefore enumerated, this deed running with the lands of said Tolbert to whomsoever hereafter devised or conveyed. It is, however, agreed between said parties, that the said Tardy shall have right to convey any of the privileges herein enumerated on any of his lands purchased, or that may hereafter be purchased, to any person; and said Tardy and Tolbert, by joint deed, both agreeing thereto, convey said privileges on the balance of the lands of said Tolbert."

Tardy and wife conveyed one-half interest in their purchase to S. C. Tardy, Jr.; Tolbert and wife subsequently conveyed one acre of the 368 acre-tract to Roach, with general warranty, "restricting, however, the said Roach from any mercantile privileges, the same having been heretofore conveyed to A. H. Tardy." Roach conveyed by deed, with general warranty, to the appellee, Creasy, the said one-acre parcel of land bought by him, without restriction. Creasy established a mercantile business on the land bought of Roach, having formed a copartnership with T. C. Creasy, under the name and style of T. C. Creasy & Co. A. H. Tardy and S. C. Tardy, Jr., filed their bill in the circuit court of Pittsylvania county, having for its object to restrain and enjoin T. C. Creasy & Co. from selling goods, wares, and merchandise on said parcel of one acre of land, or from otherwise trespassing on the alleged rights of A. H. and S. C. Tardy.

On the hearing, this bill was demurred to by Creasy & Co., "1. Because said bill is without equity on its face, and is not

sufficient in law.   2. Because S. C. Tardy, Jr., was improperly joined as a co-complainant.   3. Because Tolbert was not made a party."

The circuit court of Pittsylvania sustained the demurrer and dismissed the bill with costs, and the case is here upon appeal from that decree.   The circuit court held that the undertakings of Tolbert in his said deeds were personal covenants merely, not extending to Creasy & Co., by which they were not bound; that the said covenants did not run with the land, but were collateral, and imposed no burden upon the said land annexed thereto as an easement or servitude.

The appellants contend that the covenants in the Tolbert deeds affixed an easement to the lands of Tolbert unsold, and the said covenants being attached to the said lands adhered to them in the hands of all holders forever, running therewith, parcel of the same, an interest in the land, passing with the land to which it is annexed to the assignees thereof.

We may define an easement to be "a privilege without profit, which the owner of one tenement has a right to enjoy in respect of that tenement in or over the tenement of another person, by reason whereof the latter is obliged to suffer, or refrain from doing something on his own tenement *for the advantage of the former.*"   *Stevenson* v. *Wallace,* 27 Gratt. 87; Goddard on Easements, 2.

It has been defined to be "a right which one proprietor has to some profit, benefit, or beneficial use, out of, in, or over the estate of another."   *Ritger* v. *Parker,* 8 Cush. 147.   "A charge or burden upon one estate, the servient, for the benefit of another, the dominant."   *Marison* v. *Marquardt,* 24 Iowa, 35. "A liberty, privilege, or advantage which one may have in the lands of another without profit."   *Big Mountain Improvement Co.'s Appeal,* 54 Penn. St. 361.

An easement is a right which is appurtenant to the domi-

nant tenement, and imposed upon the servient tenement; and it is important to mark that it is not imposed upon the person of the servient owner; therefore an obligation upon him to do something for the benefit of the dominant tenement is not an easement. Then an easement which a land owner may lawfully acquire, and which may be affixed to the land as a burden upon the servient and for the benefit of the dominant tenement, such as the well-known easements, a right to light, or a right of way, a right to support for land and buildings, rights relating to the flow of water, rights relating to purity of water, rights relating to the taking of water for use. Besides such well-known easements, attempts have been made to establish other easements, which the law does not recognize, and to annex them to land; but the law will not permit a land-owner to create easements of every novel character and attach them to the soil.

But there are many other easements which have been recognized, and some of them have been of a novel kind. And, although some novel right has been granted by a land-owner to another person which may be valid and binding upon him personally, so long as he continues owner of the *quasi* servient tenement, so that on disturbance he may be sued for breach of covenant, yet if such right be of such kind that the law does not recognize as capable of being annexed to the soil, that right, good against the covenantor, is void as against other persons than the grantor, and will not entitle the grantee to sue for the benefit in his own name, on the one hand, nor annex to his premises the burden on the other. As has been said, "a new species of incorporeal hereditament cannot be created at the will and pleasure of an individual owner of an estate; he must be contented to take the sort of estate, and the right to dispose of it, as he finds the law settled by decisions or controlled by act of parliament." Pollock, C. B., in *Hill* v. *Tupper*, 2 Hurl. & Colt. 121, Eng. Ex. Rep.

This rule is well stated in a noted English case. After speaking of the certain known incidents to property and its enjoyment, and the burdens wherewith it may be affected or rights which may be created and enjoyed over it by parties other than the owner, the chancellor said: "All these kinds of property, however, all these holdings, are well known to the law and familiarly dealt with by its principles; but it must not, therefore, be supposed that incidents of a novel kind can be devised and attached to property at the fancy or caprice of any owner. It is clearly inconvenient, both to the science of the law and to the public weal, that such a latitude should be given. There can be no harm in allowing the fullest latitude to men in binding themselves and their representatives—that is, their assets, real and personal—to answer in damages for breach of their obligations. This tends to no mischief, and is a reasonable liberty to bestow; but great detriment would arise, and much confusion of rights, if parties were allowed to invent new modes of holding and enjoying real property, and to impress upon their lands and tenements a peculiar character which should follow them into all hands, however remote." 2 Mylne & Keen, page 535, case of *Keppell* v. *Bailey.*

In this case certain persons had formed themselves into a company for the establishment of a railroad, called the Trevie. The Keppells, who held the Beaufort Iron Works under a long lease, had covenanted with the proprietors of the railroad and their assigns, that the Keppells, their executors, administrators and assigns, would procure all the limestone wanted for the iron works from the Trevie quarry, and carry it along the railroad, paying a certain toll. The Keppells assigned their lease of the iron works to the defendants, who began to construct a railroad to other lime quarries, situated eastward of the Trevie quarry; and on a bill for an injunction to restrain them from using that or any other new road, it was, among

other points, objected to the covenant that it was void as tend-
ing to create a perpetuity, as a restraint of trade, and that it
was not such a covenant as would run with the lands, so as to
bind the defendants as assignees of the iron works.

The objection that it tended to create a perpetuity was over-
ruled. The objection that it was in restraint of trade was
overruled; the covenant in that case being considered not in
general restraint of trade, but only in partial restraint of
trade and not void.

In regard to the main question, whether the covenant was
capable of running with the Beaufort Iron Works, so as to
bind the defendants as assignees thereof, the Lord Chancellor
held that it was not, and after using the language cited above,
remarked further: "That every close, every messuage, might
thus be held in a different fashion, and it would be hardly
possible to know what rights the acquisition of any parcel con-
ferred, or what obligations it imposed. The right of way or
of common is of a public, as well as of a simple character, and
no one who sees the premises can be ignorant of what all the
vicinage knows. But if one man may bind his messuage and
land, to take lime from a particular kiln, another may bind
his to take coals from a certain pit, while a third may load
his with obligations to employ one blacksmith's forge, or the
members of one corporate body, in various operations on the
premises, besides many other restraints as infinite in variety
as the imagination can conceive." *Ackroyd* v. *Smith,* 10 C. B.
164; *Hill* v. *Tupper, supra; The Duke of Bedford* v. *The
Trustees of the British Museum,* 2 Mylne & Keen, 552; *Randall*
v. *Rigby,* 4 M. & W. 130; *Spencer's Case,* (25 Eliz. Pasch.) 5
Coke, 16; 1 Smith's Lead. Cases, 137, notes, and cases cited by
Hare & Wallace.

In the case of *Taylor* v. *Owen,* decided by the Supreme Court
of Indiana in 1830 (2 Blackford, 301), which was a case simi-

lar to this, Blackford, J., in delivering the opinion of the court, said: "The idea of the complainant, that the covenant in question was a conveyance to him of the exclusive right of vending merchandise in New Harmony, cannot be sustained. Such a right of the proprietor of real estate to carry on trade upon his premises cannot be made the subject of a separate conveyance, so as to prevent the subsequent holder of the property, without his own agreement, from pursuing his lawful business there. This agreement between Owen and Taylor is entirely of a personal nature. It neither runs with the land of the covenantor, nor does it create any lien thereon, either legal or equitable. Had the fee simple of the premises occupied by Moffatt been sold and conveyed to him by Owen, it seems to us very clear, that the purchaser's title could not have been affected, nor his rights arising from ownership diminished, by the collateral agreement alluded to. A lessee for years stands in the same situation in this respect as a vendee. A *bona fide* vendee or lessee of real property, for a valuable consideration, has nothing to do with these personal contracts. Whilst Owen had the rightful possession of the whole town, he had, of course, a right to a monopoly of the business. This monopoly he had it in his power to permit the complainant to enjoy by not selling any of the property to any other person, nor leasing any of it without inserting in the leases the necessary restrictions. If the covenant between Owen and Taylor respecting the exclusive right, referred to, be valid, as to which we give no opinion, Taylor's remedy is by a suit at law against Owen for a breach of the contract."

In the case of *Brewer* v. *Marshall & Cheeseman*, decided in the court of chancery of New Jersey in 1867 (18 N. J. Rep. 337), Zabriskie, Chancellor, after reviewing Spencer's case, *supra* (5 Coke, 16), said: "In this case the covenant, though not to be performed on the twelve-acre lot, is yet alleged to be

touching or concerning it, and therefore may be held to pass
to the assignee of the lot.  It is true that selling marl from the
rest of the Swope farm would not affect the twelve-acre lot or
its use or enjoyment, but it might affect the market value of
the marl dug from it." And the covenant not to sell marl
from the tract of land, or not to carry on any specific
business upon it, was held not to create an easement or
impose a servitude, but to be only a personal covenant.
Citing *Mayor of Congleton* v. *Pattison*, 10 East. 130; *Keppell*
v. *Bailey, supra;* *Hurd* v. *Curtis*, 19 Pick.; *Brewster* v. *Kidgel*,
12 Mod. 166; *Bally* v. *Wells*, 3 Wilson, 29; *Plymouth* v. *Carver*,
16 Pick. 183, and remarking: "The exclusive right of carrying
on a trade upon one lot is not an easement; and although a
covenant not to carry on such trade upon his adjoining property
may bind the covenantor, he cannot make it a servitude upon
that property, so as to burthen it in the hands of purchasers."

On appeal to the Court of Errors and Appeals, the chief jus-
tice delivered the opinion of the court affirming the decision
of the chancellor in 1868, 19 N. J., 540, he said: "I quite
agree that the covenant under consideration neither runs with
the land, nor is it, in effect, the grant of an easement." See
the opinion of Beasley, C., J., and cases cited therein.

The covenants, by Tolbert, in his deeds to Tardy, which have
already been recited in full, amount to a contract on the part
of Tolbert that he will abstain from all sorts of business on the
land owned by him, of three hundred and sixty-eight acres,
in and around the junction, including the right to sell wares,
goods, and merchandise; to keep houses of public entertain-
ment and refreshment; and to establish and erect warehouses,
factories, foundries, and shops; and that the same should
apply to his heirs or assigns, who should be deprived of these
privileges, and should run with the lands of the said Tolbert
to whomsoever hereafter devised or conveyed.

These covenants cannot be said to be in partial restraint of trade only, and therefore not void, for while they apply to a particular parcel of land, they apply to all business which could be carried on. It would be difficult to devise any trade which would not come within the terms employed—sell goods, &c., warehouses, factories, foundries and shops. They constitute a general restraint of trade, and cannot be enforced by the court as annexed to the land; they are not for a term, but for ever, attempting to bind heirs and assignees; if enforced they establish forever a novel holding of these lands. Tolbert had the right to make this contract for himself, and for his land so long as he held it; indeed, he had the right to bind his estate, real and personal, to these covenants, so long as he held it; but passing out of his hands to a purchaser can he annex these covenants to the land forever in the hands of all future holders? We think not.

These covenants are in general restraint of trade, and are void as such, so far as they affect the land in the appellee's hands, who is the vendee of Roach, who was the vendee of Tolbert. They cannot be held to be easements, as abundantly appears from what has gone before. They are not covenants which can be held to be of such a nature as to impress themselves on the land burthened, for the benefit of some other property; they are covenants collateral to the land merely—personal covenants which cannot be annexed to the land. And this case must be distinguished from the cases of *Tulk* v. *Moxhay*, 2 Phil. 774; *Whatman* v. *Gibson*, 9 Sim. 196; *Schreiber* v *Creed*, 10 Sim. 35; *Woodruff* v. *The Water Power Company*, 2 Stockt. 505. They do not constitute an interest in the thing granted, nor do they attach an equity to the property.

The cases of *Hill* v. *Miller*, 3 Paige, 254; *Watertown* v. *Corden*, 4 Paige, 510; *Barrow* v. *Richard*, 8 Paige, 350, relied on here, are where the covenant created an easement either by reservation in the land granted, or by *grant in other lands* of the grantor.

The right to light and air without obstruction from buildings on the adjoining lands is a well known species of easement; and the right to enjoy the pure air without being laden with odors or dust, or disturbed by disagreeable sounds, is of a like nature.   They are easements that may be attached to one parcel of land, and the burthen of not erecting anything that would disturb such enjoyment is a servitude that may be impressed upon another.   But the exclusive right of carrying on a trade upon any lot is not an easement; and although a covenant not to carry on such trade upon his adjoining property may bind the covenantor, he cannot make it a servitude upon that property so as to burthen it in the hands of purchasers. For a review and limitation of *Tulk* v. *Moxhay, supra*; *Morland* v. *Cook*, L. R. 6 Eq. 252; *Holmes* v. *Buckley*, 1 Eq. C. Ab. 27; *Cooke* v. *Chilcolt*, 3 Ch. D. 694; see the recent case of *Austerberry* v. *Corporation of Oldham* (1885), L. Rep. Ch. Div. 29, p. 750.

The case of *Stines* v. *Dorman*, 25 Ohio St. Rep. 583, is not in conflict with the foregoing views, but proceeds upon different circumstances.   That, White, J. says, was not a contract in general restraint of trade, but is limited in its application to a particular species of property, and forbids its use to a particular business.   That case, I think, proceeds upon its own circumstances, and the decision is based solely thereon, the court waiving the main question, "whether the stipulation contained in the deed in question is to be regarded technically, as a covenant running with the land."   It can be regarded only as authority between the parties thereto, and is authority for that case only.   It is not claimed that there is any legal remedy by which these covenants can be annexed to the land.   If equity will enforce them, then there are, perhaps, no cases where it would be denied, and the owner of land may impress upon land any notion his caprice may suggest.   And, as has been

observed by a learned judge, equity would see to it that the land shall retain such impress in the hands of every subsequent holder. And if a vendor covenants with a vendee that he will never, nor shall his assigns ever raise grain, nor permit a dwelling-house to be put thereon, it is clear, says that judge, that at law such covenants as this will not become parcel of the land so as to fetter it in its devolutions. The remedy for their breach, if intrinsically legal, is by suit against the original covenantor. If an agreement that marl shall not be sold upon a particular tract of land will pass as a burden upon such land in equity, it will be difficult to hold that in the examples just put, the same result is not to obtain.

. Thus, incidents can be annexed to land as multiform and as innumerable as human caprice. The inconvenience of giving such latitude to the power of the owner of lands is forcibly put by Lord Brougham in *Keppell* v. *Bailey,* whose judgment in that case has been cited with approbation, and followed in many recent cases.

Although any burden of a new species which the owner thinks proper to impose on his land, is not an easement which can be made appurtenant to land, yet such an obligation is perfectly valid as between the grantor and grantee of the right; and if the grantee is disturbed in his enjoyment by the grantor, the law will afford him ample remedy by action on covenant for the injury; and in the event of his being disturbed by a stranger, he may sue for such disturbance in the name of the grantor. The covenant in that case failed to run with the land, because the rights and restrictions which it imposed on the one hand, or conferred on the other, went beyond the limits of any estate or interest in land known to the law, or which it will permit to be invested with the capacity of assignment or transfer; *and sound policy will not permit an end to be obtained by a covenant which cannot be directly affected by grant.* Covenants should

have as wide a range as grants; they should not be allowed to go further, or subject land to restrictions—to deminish its utility to the owners and to the community at large.

We think the covenants upon which this case rests are collateral merely—purely personal—not touching the land; that they are void as in general restraint of trade, and are against public policy and not such as the law will recognize or enforce, and which are incapable of being annexed to the land. The appellee holds title to the land in question by deed without restriction, and he cannot be affected by the merely personal covenants between Tolbert and Creasy. The other grounds of demurrer are not necessary to be noticed—they are included within the foregoing.

We are of opinion that the demurrer to the bill was properly sustained by the circuit court, and that there is no error in the decree appealed from, and the same must be affirmed.

RICHARDSON, J., and HINTON, J., concurred.

LEWIS, P., dissenting, said:

I do not concur in the opinion of the court. I think the decree should be reversed.

There can be no doubt that the appellee purchased with notice of the covenant in question, because it is set forth in previous deeds which were duly recorded, and which are links in the chain of his title. *Burwell's Administrator* v. *Fauber*, 21 Gratt. 446; *Lamar's Executor* v. *Hale*, 79 Va. 147. And being thus a purchaser with notice, he ought not to be permitted to use the property to the damage of the appellant, and inconsistently with the covenant of which he had notice.

The case in 2 Blackf. (Ind.), cited in the opinion, was decided before, and is in harmony with, the decision in *Keppell* v. *Bai-*

_ley,_ and the New Jersey case, also much relied on, follows that decision. But the case of _Keppell_ v. _Bailey_ is no longer regarded as authority even in England, at least so far as it relates to the effect of notice of a covenant like the one in question. Such is the language of Fry, J., in the recent case of _Luker_ v. _Dennis,_ 7 L. R., Chy. Div., and see all _DeMattos_ v. _Gibson,_ 4 De G. & J. 282; _Catt_ v. _Tourle,_ L. R., 4 Chy. 674.

I think the case is analogous in principle to _Hill_ v. _Miller,_ 3 Paige, 254, decided by Chancellor Walworth, and to _Stines_ v. _Dorman,_ 25 Ohio St. 580, decided in 1874. In other words, the covenant with the appellant ought, in my opinion, to be construed in equity as creating an easement on the unconveyed land, and appurtenant to the land conveyed. See notes to _Spencer's Case,_ 1 Smith's L. Cas. 145 _et seq._ (8th Am. Ed.); Goddard on Easements, 2; _Stevenson_ v. _Wallace,_ 27 Gratt. 87.

In Kerr on Injunctions, p. 530, it is said: " The jurisdiction of courts of equity over contracts and covenants is not confined to cases where an action at law can be maintained, but extends to cases where an action at law is not maintainable. It is in many cases a matter of much doubt whether a covenant with respect to the use and occupation of land runs with the land, so as to bind at law an assignee, although assigns be expressly named in the covenant; but covenants controlling the enjoyment of land, though not binding at law, will be enforced in equity, provided the person into whose hands the land passes has taken it with notice of the covenants. 'The question,' said Lord Cottenham, 'is not whether the covenant runs with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the contract entered into by his vendor, and with notice of which he purchased." And on the next page the author says: "A contrary doctrine was laid down by Lord Brougham in _Keppell_ v. _Bailey,_ 2 M. & K. 517, but that case can be no longer considered as an authority." See also Sugden on Vendors, App. 801, 803.

I do not think the covenant is illegal on the ground that it is in restraint of trade. The restraint is not general, but relates to certain enumerated privileges, on a particular parcel of land, and is, in my opinion, reasonable. I do not think the rights of owners of property to deal with it as was done in the present case ought to be fettered and restricted as is done by the judgment in this case. Without, however, entering into any discussion of the question, I content myself with simply referring to *Oregon Steam Navigation Co.* v. *Winsor*, 20 Wall. 64; *Cowell* v. *Springs Co.*, 100 U. S. 57; *Stines* v. *Dorman, supra;* and the notes to *Mitchell* v. *Reynolds*, 1 Smith's L. Cas. 756, where the cases are collected.

FAUNTLEROY, J., concurred in opinion of LEWIS, P.

DECREE AFFIRMED.