PRESENT:  All the Justices

STEVEN F. TVARDEK, JR., ET AL.

OPINION BY
v.  Record No. 150456                                    JUSTICE D. ARTHUR KELSEY
                                                         February 12, 2016

POWHATAN VILLAGE HOMEOWNERS
ASSOCIATION, INC.

FROM THE CIRCUIT COURT FOR THE CITY OF
WILLIAMSBURG AND JAMES CITY COUNTY
Michael E. McGinty, Judge

The circuit court in this case granted a special plea in bar dismissing, on statute of

limitations grounds, a declaratory judgment action filed by Steven F. Tvardek and Marta P.

Tvardek against their homeowners' association.  Because the court erred in doing so, we reverse

the dismissal order and the circuit court's ancillary award of attorney fees to the defendant.

I.

In 2013, the Tvardeks filed a declaratory judgment complaint against their homeowners'

association, Powhatan Village Homeowners Association, Inc. (the "HOA").  They challenged the

validity of a 2008 amendment to the Powhatan Village Declaration of Protective Covenants and

Restrictions (the "2008 Amendment") on the basis that it unlawfully deprived them of a

preexisting right to rent their home, which they purchased in 2006.

After the Tvardeks filed an amended complaint amplifying their claim, the HOA filed a

special plea in bar asserting that the case should be dismissed as untimely under the one-year

statute of limitations prescribed by Code § 55-515.1(E).  The Tvardeks responded with a motion

for partial summary judgment claiming that the statute of limitations was inapplicable because

the 2008 Amendment never became "effective" under the Virginia Property Owners'

Association Act, Code § 55-509 et seq., and specifically pursuant to Code § 55-515.1(F), which

is a prerequisite for the running of the one-year limitations period in Code § 55-515.1(E).

Without taking evidence, the circuit court reviewed the pleadings, heard arguments of counsel, and entered an order granting the special plea in bar asserting the statute of limitations defense. The court later entered an order granting "prevailing party" attorney fees, in the amount of $12,237.50, to the HOA. See Code § 55-515(A); J.A. at 219.

The debate over the statute of limitations turned on a single uncontested fact: the text of a certification attached to the 2008 Amendment, which was recorded in the land records of the clerk of the circuit court. The certification stated:

> CERTIFICATION REQUIRED BY VIRGINIA CODE § 55-515.1.F
>
> The undersigned President of the Association does hereby certify that this Amendment has been approved by a vote of two-thirds of the Class A votes in the Association, as evidenced by the results of the meeting at which the vote was taken, such evidence on file with the Association, as required by Section 9.2 of the Declaration.
>
> EXECUTED on the date first written above by the duly authorized officer of the Association.
>
> POWHATAN VILLAGE
> HOMEOWNERS ASSOCIATION, INC.,
> a Virginia Nonstock Corporation
>
> By:   /s/ Barbara G. Moody
>        Barbara Moody, President

This certification was important because the one-year statute of limitations prescribed by Code § 55-515.1(E) only bars actions challenging the validity of amendments when the action is "brought more than one year after the amendment is effective." The next subsection of the statute defines the events that make an amendment effective under the Act:

> Agreement of the required majority of lot owners to any amendment of the declaration shall be evidenced by their execution of the amendment, or ratifications thereof, and the same *shall become effective* when a copy of the amendment is recorded together with a certification, signed by the principal

2

officer of the association or by such other officer or officers as the declaration may specify, that the requisite majority of the lot owners signed the amendment or ratifications thereof.

Code § 55-515.1(F) (emphasis added).

## II.

On appeal, the Tvardeks argue that the HOA filed a certification that did not comply with Code § 55-515.1(F), thus precluding the 2008 Amendment from becoming "effective" for purposes of triggering the one-year limitations period in Code § 55-515.1(E). The HOA disagrees, arguing that the limitations period should begin when the amendment is recorded and that, at any rate, the certification was sufficient to be "effective" under Code § 55-515.1(F). We agree with the Tvardeks.

## A.

"The common law of England was brought to Virginia by our ancestors" in large part "to settle the rights of property." Briggs v. Commonwealth, 82 Va. 554, 557 (1886).[1] At that time, English common law had developed a highly skeptical view of restrictions running with the land that limited the free use of property. "Historically, the strict-construction doctrine was part of the arsenal of restrictive doctrines courts developed to guard against the dangers imposed by servitudes." Restatement (Third) of Property: Servitudes § 4.1 cmt. a (2000); cf. § 1.3(1) ("A covenant is a servitude if either the benefit or the burden runs with land."); id. at intro. note (treating easements, covenants, and servitudes as part of "an integrated body of doctrine").

---

[1] First enacted in 1776, Code § 1-200 provides that "[t]he common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, except as altered by the General Assembly." As Justice Spratley explained, Virginia "expressly provided that [English common law] shall 'be the rule of decision, except in those respects wherein it is or shall be altered by the General Assembly.' These words are simple and clear. They mean what they say." Brown v. Brown, 183 Va. 353, 358, 32 S.E.2d 79, 81 (1944); see Robinson v. Matt Mary Moran, Inc., 259 Va. 412, 417-18, 525 S.E.2d 559, 562 (2000).

English common law recognized very few restrictive covenants running with the land. Those traditionally receiving judicial approval appeared to be limited to easements appurtenant "created to protect the flow of air, light, and artificial streams of water, and to ensure the subjacent and lateral support of buildings or land." United States v. Blackman, 270 Va. 68, 77, 613 S.E.2d 442, 446 (2005); see also Tardy v. Creasy, 81 Va. 553, 557 (1886). Over a century ago, we noted that "attempts have been made to establish other easements, which the [historic common] law does not recognize, and to annex them to land; but the law will not permit a landowner to create easements of every novel character and attach them to the soil." Tardy, 81 Va. at 557. Since then, in keeping with our common-law traditions, Virginia courts have consistently applied the principle of strict construction to restrictive covenants.[2]

A restrictive covenant running with the land that is imposed on a landowner solely by virtue of an agreement entered into by *other* landowners who are outside the chain of privity would have been unheard of under English common law. See generally 7 William Holdsworth, A History of English Law 287 (1925) ("Whether or not the burden of other covenants would run with the land, and whether or not the assignee of the land could be sued by writ of covenant, seem to have been matters upon which there is little or no mediaeval authority."). Privity has long been considered an essential feature of any enforceable restrictive covenant. Bally v. Wells (1769) 95 Eng. Rep. 913, 915; 3 Wils. 26, 29 ("There must always be a privity between the

---

[2] See Fein v. Payandeh, 284 Va. 599, 606, 734 S.E.2d 655, 659 (2012); Scott v. Walker, 274 Va. 209, 212-13, 645 S.E.2d 278, 280 (2007); Waynesboro Village, L.L.C. v. BMC Props., 255 Va. 75, 80, 496 S.E.2d 64, 67-68 (1998); Anderson v. Lake Arrowhead Civic Ass'n, 253 Va. 264, 269, 483 S.E.2d 209, 212 (1997); Bauer v. Harn, 223 Va. 31, 39, 286 S.E.2d 192, 196 (1982); Friedberg v. Riverpoint Bldg. Comm., 218 Va. 659, 665, 239 S.E.2d 106, 110 (1977); Riordan v. Hale, 215 Va. 638, 641, 212 S.E.2d 65, 67 (1975); Traylor v. Holloway, 206 Va. 257, 259-60, 142 S.E.2d 521, 522-23 (1965); Jernigan v. Capps, 187 Va. 73, 78, 45 S.E.2d 886, 888-89 (1948); Schwarzschild v. Welborne, 186 Va. 1052, 1058, 45 S.E.2d 152, 155 (1947); Stevenson v. Spivey, 132 Va. 115, 119, 110 S.E. 367, 368 (1922); Virginian Ry. v. Avis, 124 Va. 711, 718-19, 98 S.E. 638, 640 (1919).

4

plaintiff and defendant to make the defendant liable to an action of covenant."). Many of our cases have recognized this common law requirement. See, e.g., Beeren & Barry Invs., LLC v. AHC, Inc., 277 Va. 32, 37-38, 671 S.E.2d 147, 150 (2009); Waynesboro Village, L.L.C. v. BMC Props., 255 Va. 75, 81, 496 S.E.2d 64, 68 (1998); Sloan v. Johnson, 254 Va. 271, 276, 491 S.E.2d 725, 728 (1997).[3] We thus approach the statutory issue in this case with this historic tradition as our jurisprudential guide.[4]

## B.

The Virginia Property Owners' Association Act, Code §§ 55-508 to 55-516.2, expanded the concept of privity considerably beyond common-law limits. In general terms, the Act permits the creation of a restrictive covenant running with the land and enforceable against subsequent owners of the parcels covered by the declaration, whether or not they consent, so long as the association follows the statutorily prescribed procedures governing the association's declaration and amendments to it. Code § 55-515.1 lays out a detailed process necessary for the

---

[3] For horizontal privity, see Sonoma Development, Inc. v. Miller, 258 Va. 163, 168, 515 S.E.2d 577, 580 (1999). Accord Restatement of Property § 534(a) (1944); 7 Thompson on Real Property § 61.04(a) (David A. Thomas ed., 2d Thomas ed. 2015). For vertical privity, see Barner v. Chappell, 266 Va. 277, 284, 585 S.E.2d 590, 594 (2003), and Old Dominion Iron & Steel Corp. v. Virginia Electric & Power Co., 215 Va. 658, 663-64, 212 S.E.2d 715, 719-20 (1975). Accord Restatement of Property § 535; 7 Thompson, supra, § 61.04(e).

[4] One might think that the modern age of statutes would have marginalized the role of English common law, but this is not so. "Abrogation of the common law requires that the General Assembly plainly manifest an intent to do so." Linhart v. Lawson, 261 Va. 30, 35, 540 S.E.2d 875, 877 (2001). We do not casually presume this intent. "Statutes in derogation of the common law are to be strictly construed and not to be enlarged in their operation by construction beyond their express terms." Giordano v. McBar Indus., 284 Va. 259, 267 n.8, 729 S.E.2d 130, 134 n.8 (2012) (citation omitted). A statute touching on matters of common law must "be read along with the provisions of the common law, and the latter will be read into the statute unless it clearly appears from express language or by necessary implication that the purpose of the statute was to change the common law." Wicks v. City of Charlottesville, 215 Va. 274, 276, 208 S.E.2d 752, 755 (1974).

effective adoption of an amendment to an association's declaration.[5]  The amendment must be agreed to "by a two-thirds vote of the owners."  Code § 55-515.1(D).  Under subsection F, an amendment agreed to by a two-thirds vote "shall become effective" only "when a copy of the amendment is recorded together with a certification" signed by an authorized officer of the association.  The certification must state "that the requisite majority of the lot owners *signed* the amendment or ratifications thereof."  Code § 55-515.1(F) (emphasis added).  For statute of limitations purposes, subsection E closes the loop by providing that the one-year limitations period runs from the date the amendment becomes "effective."[6]

In this case, the certification stated only that the "Amendment has been *approved* by a vote of two-thirds" of the eligible members and that "evidence on file" with the HOA confirmed this fact.  J.A. at 109 (emphasis added).  The HOA contends that this language adequately satisfied the definition of "effective" used in Code § 55-515.1(F).  The circuit court agreed, concluding that the text of the certification, while not technically compliant, was nonetheless sufficient to trigger the one-year limitations period under Code § 55-515.1(E).  We cannot concur with the circuit court's interpretation of the statute.

---

[5] The Act tightly polices various aspects of the association's structure, management, and procedures.  See generally Code §§ 55-509.3:1 (governing rental of lots); 55-510 (specifying detailed requirements governing access to and maintenance of association records); 55-510.1 (establishing requirements for meetings of the association's board of directors); 55-513 (setting forth procedure for adopting and enforcing rules); 55-514.2 (enumerating requirements for collection and deposit of funds); 55-515.2 (specifying various requirements for corrective amendments to declarations).

[6] In contrast, under the Virginia Condominium Act, the applicable statute of limitations bars challenges "brought more than one year after the amendment is *recorded*."  Code § 55-79.71(C) (emphasis added).  As a general rule, when the legislature "has used specific language in one instance, but omits that language or uses different language when addressing a similar subject elsewhere in the Code, we must presume that the difference in the choice of language was intentional."  Zinone v. Lee's Crossing Homeowners Ass'n, 282 Va. 330, 337, 714 S.E.2d 922, 925 (2011).

Adhering closely to statutory texts, Virginia courts "presume that the legislature chose, with care, the words it used when it enacted the relevant statute." Zinone v. Lee's Crossing Homeowners Ass'n, 282 Va. 330, 337, 714 S.E.2d 922, 925 (2011). We believe it to be "our duty to interpret the statute as written and when this is done our responsibility ceases." City of Lynchburg v. Suttenfield, 177 Va. 212, 221, 13 S.E.2d 323, 326 (1941).[7] The one canon of construction that precedes all others is that "[w]e presume that the legislature says what it means and means what it says." In re: Woodley, 290 Va. 482, 491, 777 S.E.2d 560, 565 (2015).

Code § 55-515.1(F) is conspicuously precise. It requires the certification to verify that the requisite majority "signed the amendment or ratifications thereof." There is a difference between *adopting* an amendment and *signing* it or some written ratification of it. In theory, a requisite majority could simply make a show of hands at an association meeting and thereby adopt an amendment. Code § 55-515.1(F), however, demands the extra precaution of requiring that the members voting in favor of an amendment verify that vote with their signatures — no doubt to discourage quarrelsome disputes between neighbors about who voted for what and when.

Defending the circuit court's interpretation, the HOA urges us to adopt a loose interpretative interplay between subsections E and F of Code § 55-515.1, an interpretation that would allow for differing meanings for the word "effective" used in both subsections. Under this view, for purposes of running the statute of limitations period, "effective" simply means the date of "recordation" because that is when "all purchasers of lots were on notice of the amendment

_____

[7] Under this view, "[t]he question . . . is not what the legislature intended to enact, but what is the meaning of that which it did enact. We must determine the legislative intent by what the statute says and not by what we think it should have said." Carter v. Nelms, 204 Va. 338, 346, 131 S.E.2d 401, 406-07 (1963). Put another way, "[w]e do not inquire what the legislature meant; we ask only what the statute means." Oliver Wendell Holmes, The Theory of Legal Interpretation, 12 Harv. L. Rev. 417, 419 (1899).

7

and treated it as if it was in effect."  Appellee's Br. at 3.

We reject this argument, as it takes us perilously close to rewriting the statute under the subtle "guise of judicial interpretation."  Holly Hill Farm Corp. v. Rowe, 241 Va. 425, 431, 404 S.E.2d 48, 51 (1991).  The fact that a defective certification might be viewed by a title examiner as effective does not make it so.  Nor would it warrant a binary interpretation of the same statutory word even if true.  In legal codes, as in ordinary conversation, "a word is known by the company it keeps."  Sprietsma v. Mercury Marine, 537 U.S. 51, 63 (2002) (quoting Gustafson v. Alloyd Co., 513 U.S. 561, 575 (1995)).  Subsections E and F use exactly the same word and are in close company.  No textual or contextual grounds support the conclusion that "effective" should have dissimilar meanings in these adjacent subsections of Code § 55-515.1.

The HOA next argues, in the alternative, that its certification actually did comply with the requirement that it certify "that the requisite majority of the lot owners signed the amendment or ratifications thereof."  Code § 55-515.1(F).  This is because the certification's mention of "evidence on file" with the HOA "evidenced" the fact that two-thirds of the members "approved" the 2008 Amendment.  J.A. at 109; see Appellee's Br. at 5.

We reject this interpretation as well.  The issue here is not whether the certification declared that the requisite majority *approved* the 2008 Amendment — but, rather, whether it certified that each member of that majority *signed* the amendment or ratifications of it.  A bare reference to some unspecified "evidence on file" adds nothing to the analysis.  J.A. 109.  That evidence could be nothing more than minutes of the meeting, perhaps signed only by the association's secretary and by none of the majority voters.

This discussion of the statutory text returns us to our first observation.  The Virginia Property Owners' Association Act authorizes the creation and enforcement of restrictive

8

covenants against nonconsenting landowners in a manner unknown to the common law. The General Assembly, however, policed the imposition of these covenants with a host of strict procedural requirements — not the least of which is the plainly worded command that no recorded amendment shall be "effective" unless it is accompanied by a certification verifying that the requisite majority signed the amendment or a ratification of it. See Code § 55-515.1(F). In effect, the General Assembly created something entirely new to the law (the right to form private associations having power over land use) while adding precautions to honor the common law's ancient antipathy toward restrictions on the free use of private property.

C.

Anticipating our interpretation of the statute, the HOA makes its last stand with an invocation of the anti-absurdity principle. Any interpretation requiring that certifications must "strictly comply" with Code § 55-515.1(F), the HOA argues, "leads to absurd results" and would violate the "well recognized principle that the court should reject a literal construction of the words of a statute that leads to absurd results." Appellee's Br. at 5-6. We again disagree.

In this context, the anti-absurdity limitation has a legal, not colloquial, meaning. Our fidelity to the statutory text does not permit us to weigh policy arguments for and against legislation, holding out the possibility that we would fashion an interpretation based upon avoiding policies that a litigant thinks to be absurd. We have no constitutional authority to judge whether a statute is "unwise, improper, or inequitable," Holly Hill Farm Corp., 241 Va. at 431, 404 S.E.2d at 51, because the legislature, not the judiciary, is the sole "author of public policy," Campbell v. Commonwealth, 246 Va. 174, 184 n.8, 431 S.E.2d 648, 654 n.8 (1993).

Consequently, the anti-absurdity principle — understood in its legal sense — serves only as an interpretative brake on irrational literalism. This fail-safe applies in situations in which a

9

purely literal reading forces the statutory text into an "internally inconsistent" conflict or renders the statute "otherwise incapable of operation." Butler v. Fairfax Cty. Sch. Bd., ___ Va. ___, ___, 780 S.E.2d 277, 280 (2015) (citation omitted). A classic example would be a literal, but entirely dysfunctional, interpretation "validating" an act while simultaneously "nullifying" it. Frey v. Jefferson Homebuilders, Inc., 251 Va. 375, 378, 467 S.E.2d 788, 790 (1996).[8] In these situations, however, we do not weigh competing policy arguments. We merely presume that the legislature, whatever its policy rationale, did not intend the statute to collapse under the weight of its own words.

In this case, the HOA argues that a literal interpretation of Code § 55-515.1 would permit a landowner an unlimited amount of time to challenge an amendment merely because the certificate fails to recite the "magic words" required by subsection F, Oral Argument Audio at 13:43 to 13:55, thus placing on the HOA "the burden of maintaining records forever" to refute a later possible challenge, Appellee's Br. at 7. Equally absurd, the HOA contends, is that the limitations period in subsection E would never run on an ineffectiveness challenge based upon a certification in violation of subsection F. Coupled with these arguments is the suggestion that innocent purchasers may have relied on the apparent effectiveness of a legally ineffective amendment and may not learn of the problem until years after the fact. See id. at 8. These proffered absurdities are offered in support of the assertion by the HOA that the only "logical interpretation" is that the limitations period "begins to run when it is expected that the members comply with the rule." Id. at 10.

---

[8] See also Payne v. Fairfax Cty. Sch. Bd., 288 Va. 432, 436, 764 S.E.2d 40, 43 (2014); Covel v. Town of Vienna, 280 Va. 151, 158-59, 694 S.E.2d 609, 614 (2010); Virginia Dep't of Health v. NRV Real Estate, 278 Va. 181, 188 n.2, 677 S.E.2d 276, 280 n.2 (2009); Boynton v. Kilgore, 271 Va. 220, 228 n.11, 623 S.E.2d 922, 926 n.11 (2006); Cook v. Commonwealth, 268 Va. 111, 116, 597 S.E.2d 84, 87 (2004).

We see nothing legally absurd in a literal interpretation of Code § 55-515.1(E) that begins to run the limitations period when the amendment becomes effective under Code § 55-515.1(F). That interpretation does not offend logic or render the statute inoperable. A challenge to the validity of an amendment, after all, can be asserted on grounds other than its failure to "become effective" under Code § 55-515.1(F). In such circumstances, the challenge could still be barred by the limitations period in Code § 55-515.1(E). Nor does a literal reading create an irreconcilable inconsistency in the statutory text. Just the opposite is true. A literal reading avoids the most basic of textual inconsistencies — the same word meaning two different things in the same statute.

## III.

In sum, we agree with the Tvardeks that: (i) the one-year limitations period in subsection E of Code § 55-515.1 runs only from the date of an "effective" amendment; (ii) subsection F of that statute defines the requirements for an "effective" amendment; and (iii) one of those requirements, a proper certification, was not satisfied in this case. On this basis, we reverse the circuit court's order granting the HOA's special plea in bar and dismissing this case as untimely. It necessarily follows that the award of prevailing party attorney fees to the HOA must likewise be reversed.

Reversed and remanded.