PRESENT:  All the Justices

ASHLEY CORNELL, ET AL.

v.  Record No. 210934

OPINION BY
CHIEF JUSTICE S. BERNARD GOODWYN
October 13, 2022

JASON BENEDICT, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Kevin M. Duffan, Judge

In this appeal, we consider whether, pursuant to Code § 40.1-29(J), joint employer

liability in a collective action for unpaid wages can be imposed upon individuals who act directly

or indirectly in the interest of an employer in relation to an employee.

I.  BACKGROUND

This appeal involves a collective action for unpaid wages under Code § 40.1-29(J).

Ashley Cornell and Kendall Sparks sued on behalf of themselves and all others similarly situated

(collectively, the Clinicians) in the Circuit Court of the City of Virginia Beach, to recover wages

allegedly unpaid by their employer.

Christian Psychotherapy Services (CPS)[1] operated a counseling and psychotherapy

practice in Virginia Beach, Chesapeake, Suffolk, and Newport News.  The Clinicians were all

licensed therapists employed by CPS.  CPS compensated the Clinicians by paying them

commissions equal to a percentage of collected receivables for counseling and therapy services

provided by the Clinicians.  CPS paid the commissions in arrears, every two weeks, with the pay

period ending on the twentieth day of each month.  Thus, on the fifth of each month, the

Clinicians received half of their commissions on services provided through the twentieth of the

---

[1] CPS failed to respond to the complaint within the statutory period and the circuit court
entered default judgment against CPS.

previous month, with the second half of those commissions paid on or about the eighteenth of the month.

Dr. Page Huff founded CPS and owned and operated it until his death in August 2020. While Dr. Huff was alive, he ran all of CPS's operations, made all hiring and firing decisions, established employee pay rates, and made all important decisions. After his death, Dr. Huff's wife briefly ran CPS.

In September 2020, CPS hired Touchstone Business Solutions, LLC (Touchstone) as a "turnaround consultant" because CPS was in dire financial straits. A Board of Directors (the Board) was established and took over management of CPS in October 2020. Jason Benedict worked for Touchstone and, as part of CPS's engagement with Touchstone, joined the Board, serving as acting president of the Board from October 23, 2020, until January 11, 2021, when he resigned from CPS.

Cheryl Ludvik worked as a clinical social worker at CPS for almost twenty years. From May 18, 2018, until her resignation on January 8, 2021, Ludvik also served as director of operations for CPS. She joined the Board upon its formation following Dr. Huff's death, serving as chairperson and treasurer of the Board until January 8, 2021.

The Board, Benedict, and Ludvik became aware that CPS had lost more than $745,000 over the twelve months prior to July 2020 and remained afloat by relying on lines of credit and government loans. In October 2020, CPS's primary bank froze most of CPS's operating funds, and the Board considered seeking relief under federal bankruptcy laws.

In early December 2020, as part of a plan to cut costs and avoid insolvency, the Board authorized a 1% reduction in the commissions of Clinicians scheduled to be paid on January 5,

2

2021. Ludvik communicated that decision to the affected Clinicians at the Board's instruction. The Clinicians did not contest the reduction at the time.

In December 2020, CPS also received a demand letter from Optima Health Insurance Company (Optima), stating that Optima would begin recouping $831,000 in fees, that an audit determined were wrongfully paid to CPS. On January 6, 2021, special counsel, hired to investigate ways to stay Optima's recoupment procedure, informed the Board that no such stay would be possible, and that recoupment would begin on January 13.

On January 8, 2021, the Board convened a special meeting, at which it decided to pursue bankruptcy and to further reduce the Clinicians' commissions by 30% on paychecks scheduled to be paid on January 19. That same day, Ludvik informed the Clinicians of the Board's decision and then resigned from the Board.

On January 9, 2021, the Board convened another special meeting to discuss Ludvik's resignation. There, the Board determined that the cost-reduction plan adopted the day before was not tenable and voted to lay off all the Clinicians. At the Board's instruction, Benedict informed the Clinicians of their terminations, effective immediately, on January 9.

On January 11, 2021, Benedict worked with relevant staff to set up payroll due on January 19. Later on January 11, Benedict determined he could no longer serve effectively as acting president and notified the Board and CPS's counsel of his resignation from CPS. Touchstone also terminated its consulting agreement with CPS on that day.

None of the Clinicians received wages due them on January 19, 2021.

On February 17, 2021, Cornell and Sparks filed a putative collective action for unpaid wages in the Circuit Court of the City of Virginia Beach and moved for conditional certification of the collective action, alleging that CPS, Benedict, and Ludvik had knowingly withheld wages

earned by the Clinicians. In the complaint, the Clinicians argued that Benedict and Ludvik should be considered as employers who were liable, jointly and severally, with CPS, for the unpaid wages, pursuant to Code § 40.1-29(J), because of their actions directly or indirectly in the interest of CPS in relation to the Clinicians.

In response, Benedict and Ludvik filed demurrers and pleas in bar.[2] They argued that they were not employers, as that term is used in Code § 40.1-29(J), and that their resignations, before the wages were withheld, constituted an absolute bar to recovery from Benedict and Ludvik regarding the unpaid wages owed by CPS.

The circuit court conducted hearings on the demurrers and pleas in bar; the parties presented evidence ore tenus on the pleas in bar. Benedict and Ludvik testified that they at no point had any ownership interest in CPS. They also testified that all decisions to hire and fire employees had to be made by the Board, and that individually they had no power over employment decisions. According to their testimony, they also did not have any individual authority to set wages for the Clinicians; that power also resided with the Board as a whole. They asserted that the Board also retained authority over CPS's employment practices regarding the Clinicians. As for the wages that had been due on January 19, 2021, Benedict and Ludvik told the circuit court that they had no authority within CPS when the decision to withhold those wages was made, and that they individually took no action to stop the payment of those wages.

The circuit court issued a letter opinion sustaining Benedict's and Ludvik's pleas in bar. The circuit court noted that no Virginia caselaw exists regarding joint employer liability under Code § 40.1-29(J), and that the law just went into effect in July 2020. It held that the proper

---

[2] The circuit court overruled the demurrers from the bench, and they are not the subject of this appeal.

4

definition of "employer," as used in Code § 40.1-29(J), was the definition found in Code § 40.1-2, which provides the default definitions for words used in Title 40.1 of the Code.

Code § 40.1-2 defines "employer" as "an individual, partnership, association, corporation, legal representative, receiver, trustee, or trustee in bankruptcy . . . and shall include any similar *entity* acting directly or indirectly in the interest of an employer in relation to an employee." The circuit court concluded that the use of the word "entities" in the statutory definition of employer, as compared to the use of the terms "person or group of persons" used in other statutes, suggests a distinction that is important, and held the definition in Code § 40.1-2 to be narrower than the definitions used in the federal Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and Code § 40.1-28.9 (Virginia Minimum Wage Act), because those statutes extend joint employer liability to any "person" acting directly or indirectly in the interest of an employer in relation to an employee, in contrast to the more limited "entities" language applicable when considering liability under Code § 40.1-29(J).

In its letter opinion, the circuit court stated that the Clinicians' argument asking the circuit court to adopt the "economic reality" test used by federal courts in FLSA cases would be "more persuasive if this were a case under [Code §] 40.1-28.9, as that definition of employer seems more closely aligned with . . . [the] FLSA," but concluded that even under that test, Benedict and Ludvik had not been proven to be the joint employers of the Clinicians. Based on Benedict's and Ludvik's testimony, the circuit court found that neither had any unilateral authority to hire and fire employees or set wages or employment practices. The circuit court also found that neither had voted for or decided to withhold the wages due on January 19, and that all decisions to withhold wages had been unanimous decisions of the Board.

The circuit court stated that "when applying the facts of this case the [circuit c]ourt does not find that either Benedict or Ludvik meet either definition [of 'employer']." The circuit court entered a final order sustaining the pleas in bar and incorporating its reasoning in the letter opinion. The Clinicians appeal.

## II. ANALYSIS

According to the Clinicians, the definition of "employer" found in Code § 40.1-2—which governs collective actions under Code § 40.1-29(J) for unpaid wages—includes individuals, like Benedict and Ludvik, acting directly or indirectly in the interest of an employer in relation to an employee. The Clinicians insist that the definition of "employer" in Code § 40.1-2 tracks the definition of "employer" in the FLSA and confers joint employer liability on individuals in a fashion identical to federal law.

Benedict and Ludvik counter that Code § 40.1-2 utilizes a narrower definition of "employer" than that used in the FLSA, and it excludes individuals from joint employer liability under Code § 40.1-29(J) based upon actions they undertake on behalf of an actual employer. We agree with Benedict and Ludvik.

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019) (internal quotation marks omitted). In this instance, Benedict and Ludvik claim they are not employers as that term is defined in Code § 40.1-2, and thus they cannot be individually liable to the plaintiffs for unpaid wages pursuant to Code § 40.1-29(J). The movant bears the burden of proof on such a plea, and if evidence is presented ore tenus, the circuit court's factual findings "are accorded the weight of a jury finding and will not be disturbed on appeal unless they are plainly wrong or without evidentiary support." *Id.* When the plea in bar depends on pure legal questions, including

6

questions of statutory construction, we review the circuit court's holding de novo. *Gerald T. Dixon, Jr., LLC v. Hassell & Folkes, PC*, 283 Va. 456, 459 (2012).

"Adhering closely to statutory texts, Virginia courts presume that the legislature chose, with care, the words it used when it enacted the relevant statute." *Tvardek v. Powhatan Village Homeowners Ass'n, Inc.*, 291 Va. 269, 277 (2016) (internal quotation marks omitted). "We believe it to be our duty to interpret the statute as written and when this is done our responsibility ceases." *Id.* (internal quotation marks omitted). "The one canon of construction that precedes all others is that we presume that the legislature says what it means and means what it says." *Id.* (cleaned up).

The Clinicians' argument, that the definition of "employer" in Code § 40.1-2 mirrors the definition found in the FLSA, must confront the conspicuous difference in statutory language prominent in those two statutes. Congress, in enacting the FLSA, defines "employer" as "includ[ing] *any person* acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d) (emphasis added).

In marked contrast, the definition in Code § 40.1-2 states:

> "Employer" means an individual, partnership, association, corporation, legal representative, receiver, trustee, or trustee in bankruptcy doing business in or operating within this Commonwealth who employs another to work for wages, salaries, or on commission and shall include *any similar entity* acting directly or indirectly in the interest of an employer in relation to an employee.

Code § 40.1-2 (emphasis added).

Our canons of statutory construction presume that the General Assembly's decision not to adopt the FLSA definition of "employer" as a whole represents a conscious decision with deliberate implications. This presumption becomes stronger when we consider that the General Assembly did in fact adopt the FLSA's choice of the word "person" over "entity" in one closely

7

related statute, and it expressly incorporated the FLSA definition by reference in another. *See* Code § 40.1-28.9(A) (Virginia Minimum Wage Act defining "employer" to include "any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee"); Code § 40.1-29.2 (imposing employer liability for violations of overtime pay requirements and stating that "'employer' and 'employee' shall have the meanings ascribed to them under the federal Fair Labor Standards Act"). If the General Assembly had wanted to adopt the FLSA definition of "employer" in Code § 40.1-2, it has demonstrated it well knew how to do so.

We turn to the definitions of "person" and "entity," to discern the legislative intent expressed in the General Assembly's choice of the latter in Code § 40.1-2. "Person" means "a human being; the living body of a human being; an entity (such as a corporation) that is recognized by law as having most of the rights and duties of a human being." Black's Law Dictionary 1378–79 (11th ed. 2019). We contrast this with the term "entity," defined as "an organization (such as a business or governmental unit) that has a legal identity apart from its members or owners." Black's Law Dictionary 673 (11th ed. 2019). It follows from a comparison of these two definitions that an entity is to a person what a square is to a quadrangle: entities may be persons, but not all persons are entities. Absent from the legal definition of "entity" is any reference to natural persons or individuals.

We conclude from this distinction in plain meaning that the General Assembly intended to omit individuals from joint employer liability for unpaid wages under Code § 40.1-29(J) by using a narrower definition of "employer" than did Congress in the FLSA. Therefore, because

8

Code § 40.1-29(J) does not contemplate joint employer liability for individuals like Benedict and Ludvik, the circuit court did not err in sustaining their pleas in bar.[3]

### III. CONCLUSION

In sum, the circuit court did not err in sustaining Benedict's and Ludvik's pleas in bar because Code § 40.1-2 adopts a narrower definition of "employer" than the FLSA and thus excludes individuals from implied employer liability under Code § 40.1-29(J).

*Affirmed.*

---

[3] We need not address the remaining assignments of error, as our disposition of this assignment of error renders them moot.