PRESENT: All the Justices

ALPHONZO DORRELL GRAVES

OPINION BY
v. Record No. 160688                    JUSTICE STEPHEN R. McCULLOUGH
                                        October 12, 2017
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
Joseph W. Milam, Judge

The Circuit Court of the City of Danville convicted Alphonzo D. Graves of, among other

crimes, using a firearm in the commission of a felony, in violation of Code § 18.2-53.1. On July

6, 2007, the circuit court sentenced him to five years' imprisonment with two years suspended on

this charge. Graves challenges this sentence, arguing that the trial court sentenced him in excess

of the statutory maximum. We agree with his construction of the statute, as does the

Commonwealth. Accordingly, we reverse the judgment of the circuit court insofar as it imposes

a sentence exceeding the punishment authorized by the General Assembly in Code § 18.2-53.1,

vacate the two year suspended sentence, and remand the case for entry of a new sentencing order

in conformity with this opinion.[1]

BACKGROUND

Graves pled guilty to a number of charges in connection with a murder, including use of a

firearm in the commission of a felony. In February 2016, he filed a motion to vacate his

sentence for use of a firearm in the commission of a felony. He objected to the imposition of a

five-year prison sentence, arguing that it exceeded the statutory maximum and was, therefore,

_____

[1] Motions to vacate are civil matters and an appeal from a granted or denied motion to
vacate lies to this Court. *Commonwealth v. Southerly*, 262 Va. 294, 299-300, 551 S.E.2d 650,
653 (2001).

void.  The trial court denied that motion, as well as a motion to reconsider.  This appeal

followed.

ANALYSIS

We review a trial court's interpretation of a statute de novo.  *Washington v.*

*Commonwealth*, 272 Va. 449, 455, 634 S.E.2d 310, 313 (2006).

Code § 18.2-53.1 provides in relevant part:

> It shall be unlawful for any person to use or attempt to use any
> pistol, shotgun, rifle, or other firearm or display such weapon in a
> threatening manner while committing or attempting to commit
> murder . . . .  Violation of this section shall constitute a separate
> and distinct felony and any person found guilty thereof shall be
> sentenced to a mandatory minimum term of imprisonment of three
> years for a first conviction, and to a mandatory minimum term of
> five years for a second or subsequent conviction under the
> provisions of this section. Such punishment shall be separate and
> apart from, and shall be made to run consecutively with, any
> punishment received for the commission of the primary felony.

In *Hines v. Commonwealth*, 59 Va. App. 567, 721 S.E.2d 792 (2012), a divided panel of

the Court of Appeals of Virginia held that the three-year "mandatory minimum" sentence in

Code § 18.2-53.1 constitutes *both* the mandatory minimum and the mandatory maximum.  *Id.* at

575-80, 721 S.E.2d at 795-98.  Given the unique background of Code § 18.2-53.1, we agree with

the Court of Appeals.

I.      ALTHOUGH CODE § 18.2-53.1 DOES NOT SPECIFY A MAXIMUM SENTENCE, CODE
        §18.2-14 AND LEGISLATIVE HISTORY ANSWER THE QUESTION OF WHAT
        CONSTITUTES A STATUTORY MAXIMUM UNDER THIS STATUTE.

A.      Code § 18.2-53.1 is an anomaly.

The Virginia Code employs two methods to assign a punishment for a crime.  For many

crimes, the offense is assigned a numbered "class" of felony or misdemeanor.  There are six

2

Classes of felonies and four Classes of misdemeanors, each of which provides a specifically defined punishment. *See* Code §§ 18.2-10, 18.2-11. For example, Class 6 felonies are punished with "a term of imprisonment of not less than one year nor more than five years, or . . . confinement in jail for not more than 12 months and a fine of not more than $2,500, either or both." Code § 18.2-10(f); *see, e.g.,* Code § 18.2-308.4 (unlawful possession of a controlled substance while "simultaneously with knowledge and intent possess[ing] any firearm . . . is a Class 6 felony."). Other crimes fall outside of this classification scheme. For such unclassified crimes, the statute itself specifies the range of punishment. *See, e.g.,* Code § 18.2-95 (grand larceny is "punishable by imprisonment in a state correctional facility for not less than one nor more than twenty years.").

Code § 18.2-53.1 is anomalous because it neither assigns a particular Class of felony nor specifies a range of punishment within the text of the statute. The Code contains a multitude of statutes criminalizing some aspect or another of the possession or use of a firearm, and, with the exception of Code § 18.2-53.1, all of them specify a Class of felony or misdemeanor.[2]

---

[2] A non-exhaustive list of firearm offenses includes Code §§ 18.2-56.1 (reckless handling of a firearm, a Class 1 misdemeanor or a Class 6 felony); 18.2-56.2 (recklessly allowing access to firearms by children, a Class 3 or a Class 1 misdemeanor); 18.2-108.1 (receipt of stolen firearm, a Class 6 felony); 18.2-280 (willful discharge of a firearm in a public place, a Class 6 felony or a Class 1 misdemeanor if no one is injured); 18.2-282 (brandishing a firearm, a Class 6 felony); 18.2-285 (hunting with firearms while intoxicated, a Class 1 misdemeanor); 18.2-287.01 (carrying a weapon in an air carrier airport terminal, a Class 1 misdemeanor); 18.2-308.1 (possession of a firearm on school property, etc., a Class 6 felony); 18.2-308.1:2 (purchase, possession, or transportation of a firearm after having been declared incompetent or incapacitated, a Class 1 misdemeanor); 18.2-308.1:3 (possession of a firearm by a person involuntarily admitted to a facility or ordered to mandatory outpatient treatment, a Class 1 misdemeanor); 18.2-308.1:4 (purchase or transportation of a firearm by persons subject to certain court orders, a Class 1 misdemeanor; possession of a firearm by a person subject to a protective order in cases of family abuse, a Class 6 felony); 18.2-308.2 (possession or transportation of firearm by a convicted felon, a Class 6 felony); 18.2-308.2:01 (possession or transportation of a

3

Furthermore, the Code contains 42 statutes that impose a mandatory minimum punishment.

Except for Code § 18.2-53.1, each of the other 41 statutes either assigns a class to the offense or

specifically establishes a maximum punishment, thereby establishing a defined range.[3]

---

firearm by an alien who is illegally present, a Class 6 felony); 18.2-308.4 (possession of firearms while possessing illegal drugs, a Class 6 felony); 18.2-308.5 (manufacture, importation, or sale of a plastic firearm, a Class 5 felony); 18.2-308.7 (possession or transportation of a handgun or assault firearm for persons under age 18, a Class 1 misdemeanor).

[3] Code §§ 3.2-4212 (unlawful distribution of cigarettes); 4.1-305 (unlawful purchasing or possessing alcoholic beverages); 15.2-1812.2 (willful and malicious damage or defacement of public or private facilities); 16.1-253.2 (violation of provisions of protective orders); 18.2-36.1 (certain conduct punishable as involuntary manslaughter); 18.2-36.2 (involuntary manslaughter; operating watercraft while under the influence); 18.2-46.3:3 (enhanced punishment for gang activity in gang-free zone); 18.2-51.1 (malicious bodily injury to law enforcement officers, etc.); 18.2-57 (assault and battery); 18.2-60.4 (violation of protective orders); 18.2-61 (rape); 18.2-67.1 (forcible sodomy); 18.2-67.2 (object sexual penetration); 18.2-121 (entering property of another for purpose of damaging it); 18.2-154 (shooting or throwing missiles at train, car, etc.); 18.2-186.4 (use of person's identity with intent to coerce, intimidate, or harass); 18.2-248 (manufacturing or distributing, etc. a controlled substance); 18.2-248.01 (transporting controlled substances into the Commonwealth); 18.2-248.03 (manufacturing or distributing, etc. methamphetamine); 18.2-248.1 (distribution of marijuana); 18.2-248.5 (illegal stimulants and steroids); 18.2-255 (distribution of certain drugs to minors); 18.2-255.2 (sale or manufacture of drugs on or near certain properties); 18.2-266.1 (persons under 21 driving after illegally consuming alcohol); 18.2-270 (driving while intoxicated); 18.2-308.1 (possession of weapon on school property); 18.2-308.2 (possession or transportation of firearms by convicted felons); 18.2-308.2:2(M) (purchasing a firearm for someone ineligible to purchase); 18.2-308.4 (possession of firearms while in possession of certain substances); 18.2-374.1 (production, publication, etc. of child pornography); 18.2-374.1:1 (possession, reproduction, distribution, etc. of child pornography); 18.2-374.3 (use of communications systems to facilitate certain offenses involving children); 33.2-802 (dumping trash); 46.2-301 (driving while licenses suspended or revoked); 46.2-341.28 (driving commercial vehicle while intoxicated); 46.2-357 (operation of motor vehicle by habitual offender); 46.2-391 (driving with revoked license); 46.2-865.1 (injuring or causing the death of another while street racing); 46.2-868 (reckless driving); 46.2-1110 (driving over-height vehicle into tunnel or obstruction); 53.1-203 (felonies by prisoners).

4

B.     Code § 18.2-14 specifies that punishment is determined by resorting to the statutory text.

Code § 18.2-14 provides that

> Offenses defined in Title 18.2 and in other titles in the Code, for which punishment is prescribed without specification as to the class of the offense, shall be punished according to the punishment prescribed in the section or sections thus defining the offense.

The command of Code § 18.2-14 is to look inwardly in interpreting Virginia sentencing provisions, to the text of the statute, rather than outwardly, to persuasive authority from other jurisdictions.

Code § 18.2-53.1 does not specify a class of offense. According to the plain language of Code § 18.2-14, the crime should be punished "according to the punishment prescribed in the section or sections thus defining the offense." The punishment prescribed in Code § 18.2-53.1 is a minimum of three years for a first conviction and a minimum of five years for a second or subsequent conviction. The Court of Appeals put its finger on the interpretive dilemma when it noted that, on the one hand, "'mandatory *minimum*' suggests that the trial court has some discretion in imposing a sentence greater than the mandatory term of incarceration." *Hines*, 59 Va. App. at 575, 721 S.E.2d at 796. On the other hand, however, "application of Code § 18.2-14 would seem to indicate that the trial court may impose only a three or five-year term of incarceration." *Id.* at 576, 721 S.E.2d at 796. Given the ambiguity of the statute, we consult its legislative history to ascertain its meaning.

C.     Legislative history explains the anomalous language of Code § 18.2-53.1.

Code § 18.2-53.1 does not specify a maximum sentence. To fill this lacuna and resolve the conundrum of legislative intent, we examine its legislative history. The predecessor statute

5

to Code § 18.2-53.1 classified the offense as a Class 6 felony, and a second or subsequent offense as a Class 5 felony. 1975 Acts chs. 1296, 1299-1300. In 1976, the General Assembly substituted a fixed term of incarceration for the felony classifications, making the offense punishable by a one-year sentence for a first offense and three years for a second or subsequent offense. 1976 Acts ch. 430. The General Assembly also specified that "the sentence prescribed for a violation of the provisions of this section shall not be suspended in whole or in part." *Id.* This change, we recognized, had the effect of displacing "the wide range of discretionary penalties originally authorized" with "[i]nflexible penalties" of specific duration. *Ansell v. Commonwealth*, 219 Va. 759, 763, 250 S.E.2d 760, 762 (1979). The General Assembly later increased the sentences, but retained their character as fixed terms of incarceration. 1982 Acts ch. 1225; 1993 Acts ch. 1207.

In 2001, the General Assembly tasked the Virginia State Crime Commission "to study the organization of and inconsistencies in Title 18.2 of the Code." H.J. Res. 687, Va. Gen. Assem. (Reg. Sess. 2001). The Crime Commission issued its report in 2004, proposing various recommendations and suggesting "amendments throughout the Virginia Code to use consistent language when describing mandatory minimum criminal sentences." Virginia State Crime Commission, Report to the Governor and General Assembly of Virginia: The Reorganization and Restructuring of Title 18.2, H. Doc. No. 15, at 5 (2004). The report noted that "[t]he *Code of Virginia* currently has inconsistent language for the concept of a mandatory minimum punishment." The Code contained such variations as "minimum mandatory;" "mandatory minimum;" "minimum, mandatory;" "none of which may be suspended;" sentence "shall not be subject to suspension;" and, that the sentence "shall not be subject to suspension in whole or in

6

part." *Id.* at 37. The Commission proposed the adoption of a definition for "mandatory

minimum punishment" as well as amending existing statutes to adopt uniform language. *Id.*

Although the General Assembly did not adopt all of the recommendations contained in

the Crime Commission's report, it did follow through on its suggestion to adopt a definition of

"mandatory minimum punishment" and to adopt uniform language throughout the Code. 2004

Acts ch. 461, proposed as House Bill 1059. The legislation was introduced by a member of the

Crime Commission. Other members of the Crime Commission also served as patrons of the bill.

House Bill 1059 is attached as an exhibit to the Crime Commission's 2004 report.

The bill established a definition of "mandatory minimum punishment," now codified at

Code § 18.2-12.1, and replaced the disparate descriptions of mandatory minimum sentences with

the language recommended by the Crime Commission. For example, the General Assembly

amended Code § 4.1-305, altering the language from "a fine of at least $500" to "a mandatory

minimum fine of $500." 2004 Acts ch. 461, at 1. As another illustration, Code § 18.2-57 was

changed in pertinent part from a term of incarceration, of which 30 days "shall not be suspended,

in whole or in part" to read instead that the 30 days "shall be a mandatory minimum term of

confinement." *Id*. at 3.

The bill amended Code § 18.2-53.1 as follows:

> It shall be unlawful for any person to use or attempt to use any
> pistol, shotgun, rifle, or other firearm or display such weapon in a
> threatening manner while committing or attempting to commit
> murder, rape, forcible sodomy, inanimate or animate object sexual
> penetration as defined in § 18.2-67.2, robbery, carjacking,
> burglary, malicious wounding as defined in § 18.2-51, malicious
> bodily injury to a law-enforcement officer as defined in §
> 18.2-51.1, aggravated malicious wounding as defined in §
> 18.2-51.2, malicious wounding by mob as defined in § 18.2-41 or
> abduction. Violation of this section shall constitute a separate and

7

distinct felony and any person found guilty thereof shall be sentenced to a *mandatory minimum* term of imprisonment of three years for a first conviction, and ~~for~~ *to* a *mandatory minimum* term of five years for a second or subsequent conviction under the provisions of this section. ~~Notwithstanding any other provision of law, the sentence prescribed for a violation of the provisions of this section shall not be suspended in whole or in part, nor shall anyone convicted hereunder be placed on probation.~~ Such punishment shall be separate and apart from, and shall be made to run consecutively with, any punishment received for the commission of the primary felony.

*Id.* at 674.

This amendment and the insertion of the now standard language establishing a mandatory minimum sentence had the effect of displacing a fixed sentence without specifying a mandatory maximum. The amendments to Code § 18.2-53.1, however, are entirely in keeping with the other changes in the bill. The singular common thread throughout the entire bill is the adoption of a uniform style for prescribing mandatory minimum punishment.[4] None of the changes to the other statutes increased a penalty for a crime. This background reveals that the changes in House Bill 1059 were meant to clarify and make uniform the law concerning mandatory minimum sentences, not to effect substantive changes in the law.

The fact that the General Assembly did not prepare a fiscal impact statement for the 2004 amendments yields an additional clue that it did not intend to increase the punishment in Code § 18.2-53.1. As the Court of Appeals noted in *Hines*, Code § 30-19.1:4(A) required the Commission to "prepare a fiscal impact statement reflecting the operating costs attributable to and necessary appropriations for any bill which would result in a net increase in period of

---

[4] The bill made other cosmetic changes, such as changing words for numbers, e.g., replacing "twenty" with "20" and updating "Immigration and Naturalization Service" to "United States Citizenship and Immigration Services." *Id.* at 677, 681.

imprisonment in state adult correctional facilities." 59 Va. App. at 578, 721 S.E.2d at 797. An amendment that intended to increase a term of incarceration from a fixed mandatory term of three years to a potential term of life imprisonment would plainly result in a fiscal impact. The bill, however, did not include a fiscal impact statement.

Finally, one would expect the imposition of a potential maximum life sentence on so common an offense to generate a heated debate. The bill passed the House and Senate Courts of Justice unanimously, passed the House on a block vote of 100 to 0 and the Senate on a 39-0 vote. This unanimity would be inexplicable unless the bill truly constituted a simple clarifying measure rather than a substantive change imposing a far heavier penalty for a common crime.

We acknowledge that "[l]egislation is presumed to effect a change in the law unless there is clear indication that the General Assembly intended that the legislation declare or explain existing law." *Chappell v. Perkins*, 266 Va. 413, 420, 587 S.E.2d 584, 587 (2003). Here, however, there is a clear indication that the legislation did not effect a change in the law with respect to Code § 18.2-53.1. The legislation came at the suggestion of the Crime Commission with a stated purpose of using consistent terminology when imposing mandatory minimums. The language in the bill tracks the proposal by the Crime Commission. None of the other statutes amended by House Bill 1059 were the subject of substantive changes. It is therefore unlikely the General Assembly singled out Code § 18.2-53.1 for a change so drastic as an increase from a three-year fixed term to a possible maximum of life in prison. When the General Assembly wishes to impose a life sentence, it knows how to make its intent manifest.[5] Finally,

_____

[5] Statutes imposing life in prison can arise as Class 1 felonies, Class 2 felonies, or unclassified felonies for which a punishment of life in prison is specified within the text of the statute. Class 1 felony: Code § 18.2-31 (capital murder). Class 2 felonies: Code §§ 18.2-32 (first

the absence of a fiscal impact statement and the unanimous passage of the bill constitute further

indication that the General Assembly did not intend to enact a significant change to Code §

18.2-53.1.  These circumstances, in combination, refute the ordinary presumption that the

General Assembly intended a substantive change with its 2004 amendments to Code § 18.2-53.1.

Instead, Code § 18.2-53.1 is best read to impose a fixed three-year term of confinement.  In other

words, the three-year term is both the mandatory minimum and the mandatory maximum.

> D.      Drawing a judicial inference of a legislative intent to impose life in prison is
>         inapposite here and inconsistent with longstanding Virginia practice.

Many courts have adopted a rule of construction under which courts will imply a

legislative intent to impose a potential maximum life sentence when a statute is silent on a

maximum term of imprisonment.  *See, e.g., United States v. Turner*, 389 F.3d 111, 120 (4th Cir.

2004).  As the United States Court of Appeals for the Tenth Circuit has noted, "[l]eaving the

determination of maximum sentences to the court is not uncommon" in the federal system,

---

degree murder); 18.2-32.2 (premeditated killing of the fetus of another); 18.2-46.5 (acts of terrorism where the base offense is punishable by a minimum of twenty years); 18.2-46.6 (use of a weapon with intent to commit terrorism); 18.2-48 (abduction with intent to extort money or for immoral purpose); 18.2-51.2 (aggravated malicious wounding); 18.2-89 (armed burglary); 18.2-90 (armed statutory burglary); 18.2-91 (entering dwelling house with intent to commit felony); 18.2-92 (breaking and entering dwelling house to commit misdemeanor while armed with deadly weapon); 18.2-93 (armed bank robbery); 18.2-162 (destruction of public utility resulting in death of another due to radiation); 18.2-289 (use of machine gun for crime of violence); 18.2-300 (possession of sawed-off shotgun or rifle in perpetration of violent crime); 18.2-481 (treason); 18.2-515 (racketeering – subsequent offense). Unclassified felonies punishable by life: Code §§ 18.2-58 (robbery); 18.2-58.1 (carjacking); 18.2-61 (rape); 18.2-67.1 (forcible sodomy); 18.2-67.2 (object sexual penetration); 18.2-67.5:3 (violent felony sexual assault – subsequent); 18.2-77 (burning or destroying occupied dwelling house); 18.2-248 (manufacture or distribution of Schedule I or II substance – subsequent; manufacture or distribution of certain specific types and quantities of narcotics; principal in a continuing criminal enterprise); 18.2-248.03 (manufacture or distribution of over 227 grams of substance with detectable methamphetamine); 18.2-248.1 (third or subsequent felony marijuana offense).

10

*United States v. Jones*, 540 F.2d 465, 468 (10th Cir. 1976), and courts have deduced from this practice Congressional intent to allow courts broad discretion in sentencing. *Id.* It appears that federal courts adopted this inference in interpreting the Lindbergh Act, which did not specify a maximum sentence. *See Bates v. Johnston*, 111 F.2d 966 (9th Cir. 1940); *Bailey v. United States*, 74 F.2d 451, 452 (10th Cir. 1934). Some courts look to legislative history in applying this principle, but more often than not federal courts apply this default principle without explanation or amplification. *Compare Walberg v. United States*, 763 F.2d 143, 148-49 (2nd Cir. 1985) ("Since the legislative history of the Act reveals an intention to give judges maximum discretion and flexibility in sentencing, we read that the Act's failure to provide an explicit maximum period . . . as implicitly authorizing the imposition of any period from the minimum specified in the statute to the life of the defendant.") *with United States v. Walker*, 720 F.3d 705, 709 (8th Cir. 2013) (Bright, J., concurring) (lamenting the "sparse explanation" that typically accompanies opinions applying this judicial inference). A judicial inference that legislative silence on a maximum punishment means life does have the benefit of protecting a legislative enactment against a challenge that it is void for vagueness. *Jones*, 540 F.2d at 468. For states with indeterminate sentencing regimes like New Mexico, such an inference also fits in logically with the rehabilitative goals of indeterminate sentencing regimes. *See McCutcheon v. Cox*, 377 P.2d 683, 686 (N.M. 1962).

We conclude that it would be inappropriate to resort to the "legislative silence means life" judicial inference in construing Code § 18.2-53.1. First, we are persuaded for all the reasons set forth above that the legislature did not *in this instance* intend to adopt a maximum sentence of life in prison for a violation of Code § 18.2-53.1. Second, although it may be

11

relatively common for Congress and some state legislatures to deliberately omit a statutory maximum, and, therefore, for courts to adopt an inference to address that situation, Virginia practice has been different. Open-ended statutes that leave the determination of maximum sentences to the courts are not common in our Code. In fact, aside from Code § 18.2-53.1, such statutes are unheard of in Virginia. In addition, Virginia has not adopted an indeterminate sentencing regime. For all of these reasons, we see no basis to invoke this judicial inference in construing Code § 18.2-53.1. Thus, as the legislative history discussed above confirms, Code § 18.2-53.1 is best read to impose a fixed three-year term of confinement. The three-year term is both the mandatory minimum and the mandatory maximum.

II.     THE APPROPRIATE REMEDY IS TO ENTER FINAL JUDGMENT.

The defendant asks us to remand the case to the trial court for a resentencing on all of his convictions. The Commonwealth disagrees, contending that there is no reason to remand when the only appropriate sentence is a fixed three-year term of incarceration. We agree with the Commonwealth. Ordinarily, "a criminal defendant . . . is entitled to a new sentencing hearing" where "a sentence [is] imposed in violation of a prescribed statutory range of punishment." *Rawls*, 278 Va. at 221, 683 S.E.2d at 549. In this instance, a three-year fixed term of confinement is the only sentence available. Therefore, a new sentencing hearing is unnecessary as to the defendant's conviction under Code § 18.2-53.1. In addition, there is no argument that the sentences for Graves' other crimes were void *ab initio*. Therefore, we see no reason in this collateral attack to invalidate them.[6]

_____

[6] We stated in *Burrell v. Commonwealth*, 283 Va. 474, 480, 722 S.E.2d 272, 275 (2012) that the sentencing order itself was void. But the statement in *Burrell*, that the *order* was void, as opposed to a *particular sentence* being void, was made in the context of an order sentencing a

12

CONCLUSION

We will reverse the judgment below insofar as it imposes a sentence exceeding the

punishment authorized by the General Assembly in Code § 18.2-53.1, vacate the two year

suspended sentence, and remand the case for entry of a new sentencing order in conformity with

this opinion.

*Affirmed in part,*
*reversed in part,*
*and remanded.*


JUSTICE KELSEY, with whom JUSTICE McCLANAHAN joins, dissenting.

Code § 18.2-53.1 establishes a "mandatory minimum" term of imprisonment.  The text of

the statute, the majority concedes, "does not specify a maximum sentence."  *Ante* at 5.  Viewing

this omission as an "anomaly," *ante* at 2, the majority fills what it considers a statutory "lacuna,"

*ante* at 5, with a judicially implied maximum term — one exactly equal to the statute's express

minimum term.  In other words, the minimum is now the maximum.  Through the majority's

interpretive prism, "no less than" means "no more than" and "at least" means "at most."

I respectfully dissent.

I.  Minimum Means Minimum

In 2004, the General Assembly amended the felony-firearm statute.  "As a general rule, a

presumption exists that a substantive change in law was intended by an amendment to an

---

defendant for a single crime.  In the context of that case, therefore, that statement was accurate.
Here, Graves was sentenced for multiple crimes, and only one of his sentences was void *ab
initio*.  Graves' other sentences remain valid.  Therefore, this case is like *Rawls*, where we
invalidated a specific sentence that was void *ab initio*, not the order in its entirety when it
contained multiple sentences.  278 Va. at 221-22, 683 S.E.2d at 549.

13

existing statute." *Commonwealth v. Bruhn*, 264 Va. 597, 602, 570 S.E.2d 866, 869 (2002) (citation omitted). That presumption holds true here.

The prior version of Code § 18.2-53.1 authorized a *fixed* "term of imprisonment" of three years for the first offense, or five years for subsequent offenses, which the sentencing court could not suspend in whole or in part. 2004 Acts ch. 461, at 674 (effective July 1, 2004). The 2004 amendment added the phrase "mandatory minimum" to qualify the "term of imprisonment." *Id.* The phrase "mandatory minimum" — when used in scores of other Virginia criminal statutes — means the minimum, non-suspendable portion of a sentence, the lowest point of a statutory sentencing range.[1] In every instance where the legislature has chosen to equate the mandatory minimum sentence with the maximum statutory punishment, *it has done so expressly.*[2]

---

[1] *See* Code §§ 3.2-4212(D), 4.1-305(C), 15.2-1812.2(A), 16.1-253.2(A), 18.2-36.1(B), 18.2-36.2(B), 18.2-46.3:3, 18.2-51.1, 18.2-57, 18.2-60.4(A), 18.2-61(B)(1), 18.2-67.1(B)(1), 18.2-67.2(B)(1), 18.2-121, 18.2-154, 18.2-186.4, 18.2-248(C), 18.2-248.01, 18.2-248.03, 18.2-248.1(d), 18.2-248.5(A), 18.2-255(A), 18.2-255.2(B), 18.2-266.1(B), 18.2-270, 18.2-308.2:2(M)-(N), 18.2-308.4(B),18.2-374.1(C1)-(C2), 18.2-374.1:1(C), 18.2-374.3(C)-(D), 33.2-802(C), 46.2-301(C), 46.2-341.28, 46.2-357(B)(1)-(2), 46.2-391(D)(1)-(2), 46.2-865.1(A)(2), 46.2-868(C), 53.1-203.

[2] *See* Code §§ 18.2-61(B)(2) (requiring a mandatory minimum of life imprisonment when an adult offender rapes a child under 13 even though the crime of rape carries a general punishment range of 5 years' imprisonment to life), 18.2-67.1(B)(2) (requiring a mandatory minimum of life imprisonment when an adult offender forcibly sodomizes a child under 13 even though the crime of forcible sodomy carries a general punishment range of 5 years' imprisonment to life), 18.2-67.2(B)(2) (requiring a mandatory minimum of life imprisonment for object sexual penetration by an adult offender of a child under 13 even though the crime of object sexual penetration carries a general punishment range of 5 years' imprisonment to life), 18.2-308.1(C) (requiring a 5-year mandatory minimum for possessing a firearm on school property, a crime punished as a Class 6 felony that carries a general punishment range of up to 5 years' imprisonment), 18.2-308.2(A) (requiring a 5-year mandatory minimum for possessing a firearm after a conviction for a violent felony, a crime punished as a Class 6 felony that carries a general punishment range of up to 5 years' imprisonment), 18.2-308.4(C) (requiring a 5-year mandatory minimum for possessing a firearm while possessing certain drugs with the intent to distribute, a crime punished as a Class 6 felony that carries a general punishment range of up to 5 years' imprisonment), 46.2-1110 (requiring a mandatory minimum fine of $1,000, or $2,500 for a subsequent offense, for attempting to drive through a tunnel in violation of height or weight

The Virginia tradition has always been to ask "not what the legislature intended to enact, but what is the meaning of that which it did enact. We must determine the legislative intent by what the statute says and not by what we think it should have said." *Carter v. Nelms*, 204 Va. 338, 346, 131 S.E.2d 401, 406-07 (1963).[3] I thus would not inquire as to "what the legislature meant" but instead "ask only what the statute means." *Tvardek v. Powhatan Vill. Homeowners Ass'n*, 291 Va. 269, 277 n.7, 784 S.E.2d 280, 284 n.7 (2016) (quoting Oliver Wendell Holmes, *The Theory of Legal Interpretation*, 12 Harv. L. Rev. 417, 419 (1899)).

Following this tradition, "[i]t is our duty to interpret the statute as written and when this is done our responsibility ceases." *City of Lynchburg v. Suttenfield*, 177 Va. 212, 221, 13 S.E.2d 323, 326 (1941); *see also Continental Baking Co. v. City of Charlottesville*, 202 Va. 798, 805, 120 S.E.2d 476, 480 (1961). Because we "can only administer the law as it is written," *Coalter v. Bargamin*, 99 Va. 65, 71, 37 S.E. 779, 781 (1901), the interpretative principle that precedes all

---

limitations, a crime that carries the specific punishment of a $1,000 fine, or $2,500 for a subsequent offense).

[3] *See also United States v. Union Pac. Ry.*, 91 U.S. 72, 85 (1875) ("Courts cannot supply omissions in legislation, nor afford relief because they are supposed to exist."); *United States v. Fisher*, 6 U.S. 358, 387 (1805) (Marshall, C.J.) ("[I]t cannot be pretended that the natural sense of words is to be disregarded, because that which they import might have been better, or more directly expressed."); Henry Campbell Black, Handbook on the Construction and Interpretation of the Laws § 26, at 45 (2d ed. 1911) ("If the language of the statute is plain and free from ambiguity, and expresses a single, definite, and sensible meaning, that meaning is conclusively presumed to be the meaning which the legislature intended to convey. . . . [e]ven though the court should be convinced that some other meaning was really intended by the law-making power . . . ."); 1 Joseph Story, Commentaries on the Constitution of the United States § 401, at 384 (1833) ("Where the words are plain and clear, and the sense distinct and perfect arising on them, there is generally no necessity to have recourse to other means of interpretation. It is only, where there is some ambiguity or doubt arising from other sources, that interpretation has its proper office."); J.G. Sutherland, Statutes and Statutory Construction § 237, at 313-14 (1891) ("'We are not at liberty to imagine an intent and bind the letter of the act to that intent . . . .' Even when a court is convinced that the legislature really meant and intended something not expressed by the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of language which is free from ambiguity." (citation omitted)).

others is that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there," *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (citation omitted). We thus "presume that the legislature chose, with care, the words it used when it enacted the relevant statute," *Tvardek*, 291 Va. at 277, 784 S.E.2d at 284 (citation omitted), and give each word of a statute its "ordinary and plain meaning, considering the context in which it is used," *Hilton v. Commonwealth*, 293 Va. 293, 299, 797 S.E.2d 781, 784-85 (2017) (citation omitted). The ordinary and plain meaning of the word "minimum" is minimum, not maximum.

Seeking to rebut the presumption that the 2004 amendment changed the law by replacing a fixed term of imprisonment with a mandatory minimum term of imprisonment, the majority correctly points out that Code § 18.2-53.1 does not state a maximum term of imprisonment either by specifically stating an upper limit or by incorporating a maximum term from the classification of felonies found in Code § 18.2-10. The majority finds this omission anomalous because, read literally, Code § 18.2-53.1 authorizes a potential sentence of life imprisonment. This anomaly, the majority reasons, empowers us to blue-pencil the 2004 amendment so that the minimum sentence equals the maximum sentence. For several reasons, I am unwilling to do so.

To begin, what the majority views as a legal anomaly has been settled law in federal and state courts for many years. It is not at all anomalous for a legislature to enact a mandatory minimum sentence and "decline to state a maximum." *United States v. Turner*, 389 F.3d 111, 120 (4th Cir. 2004); *see also Ex parte Robinson*, 474 So. 2d 685, 686 (Ala. 1985) ("Our research reveals many statutes, both federal and state, which fix a minimum penalty for an offense but which fail to prescribe a maximum penalty."). When legislatures impose only a "minimum sentence," they "leav[e] it within the power of the court to fix the maximum sentences." *Turner*,

16

389 F.3d at 120 (quoting *Binkley v. Hunter*, 170 F.2d 848, 849 (10th Cir. 1948)). In short, these statutes impose "a mandatory minimum sentence, not a mandatory maximum sentence." *United States v. Lego*, 855 F.2d 542, 546 (8th Cir. 1988). One court has described this principle as "so self-evident as to not need explanation." *Turner*, 389 F.3d at 120.

In such cases, American courts uniformly hold that "in the absence of a statutory maximum penalty, the maximum penalty when a term of not less than a certain number of years is provided, means that the maximum is life imprisonment." *United States v. Sias*, 227 F.3d 244, 247 (5th Cir. 2000); *see also Ex parte Robinson*, 474 So. 2d at 686. This conclusion merely reflects the "sensible rule of statutory construction whereby the absence of a specified maximum simply means that the maximum is life imprisonment." *Turner*, 389 F.3d at 120. The mandatory minimum provision, after all, "is designed to serve as the floor, not the ceiling" for criminal sentences. *Sias*, 227 F.3d at 247; *see also United States v. Wolak*, 923 F.2d 1193, 1199 (6th Cir. 1991); *United States v. Jackson*, 835 F.2d 1195, 1197 (7th Cir. 1987); *Ex parte Robinson*, 474 So. 2d at 686; *State v. Turnbow*, 466 P.2d 100, 101 (N.M. 1970); *State v. Sisneros*, 464 P.2d 924, 925 (N.M. Ct. App. 1970).

A multitude of courts recognize that the minimum-means-minimum principle applies to felony-firearm statutes no less than any other criminal statute. *See Alleyne v. United States*, 570 U.S. ___, ___, 133 S. Ct. 2151, 2160-63 (2013) (holding that any fact which increases the "mandatory minimum" sentence under the federal firearm statute must be alleged in the indictment while observing that "the maximum of life marks the outer boundary" of the sentencing range under that federal firearm statute and noting that, *although the trial court could originally have imposed a sentence above the mandatory minimum*, an indictment for the additional act is still necessary to subject a defendant to a higher mandatory minimum); *Custis v.*

17

*United States*, 511 U.S. 485, 487 (1994) ("The Armed Career Criminal Act of 1984 . . . raises the

penalty for possession of a firearm by a felon from a maximum of 10 years in prison to a

mandatory minimum sentence of 15 years and a maximum of life in prison without parole if the

defendant 'has three previous convictions for a violent felony or a serious drug offense.'"

(alteration and citation omitted)).[4]

With the exception of the divided Court of Appeals panel opinion in *Hines v.

Commonwealth*, 59 Va. App. 567, 721 S.E.2d 792 (2012), the majority cites no cases suggesting

that the phrase "mandatory minimum" also means the statutory maximum, and I am unaware of

any such cases. Nor am I persuaded by the majority's cursory dismissal of this unbroken line of

federal and state cases on the *ipse dixit* that the statutes and sentencing regimes at issue in those

cases have little in common with those at issue here. *See ante* at 10-12. Because the legal issue

is the same — whether "minimum" means minimum, not maximum — they have everything in

---

[4] *See also United States v. Ortiz-García*, 665 F.3d 279, 284-85 & n.6 (1st Cir. 2011); *United States v. Stewart*, 628 F.3d 246, 258-59 (6th Cir. 2010); *United States v. Rozier*, 598 F.3d 768, 772 (11th Cir. 2010); *United States v. Shabazz*, 564 F.3d 280, 288-89 (3d Cir. 2009); *United States v. Whitley*, 529 F.3d 150, 158 (2d Cir. 2008), *abrogated on other grounds by Abbott v. United States*, 562 U.S. 8, 13, 24-28 (2010); *United States v. Johnson*, 507 F.3d 793, 798 (2d Cir. 2007); *United States v. Washington*, 462 F.3d 1124, 1139 & n.8 (9th Cir. 2006); *United States v. Gamboa*, 439 F.3d 796, 811-12 (8th Cir. 2006); *United States v. Dare*, 425 F.3d 634, 642-43 (9th Cir. 2005); *United States v. Weems*, 322 F.3d 18, 26 (1st Cir. 2003); *United States v. Avery*, 295 F.3d 1158, 1170 (10th Cir. 2002); *United States v. Cristobal*, 293 F.3d 134, 147 (4th Cir. 2002); *United States v. Harrison*, 272 F.3d 220, 225-26 (4th Cir. 2001); *United States v. Pounds*, 230 F.3d 1317, 1319 (11th Cir. 2000); *United States v. Mack*, 229 F.3d 226, 229 n.4 (3d Cir. 2000); *Sias*, 227 F.3d at 246-47; *United States v. Brame*, 997 F.2d 1426, 1428 (11th Cir. 1993); *United States v. Fields*, 923 F.2d 358, 362 (5th Cir. 1991), *overruled on other grounds by United States v. Lambert*, 984 F.2d 658, 662 & n.10 (5th Cir. 1993) (en banc); *United States v. Tisdale*, 921 F.2d 1095, 1100 (10th Cir. 1990); *United States v. Alvarez*, 914 F.2d 915, 919 (7th Cir. 1990), *superseded on other grounds*, U.S. Sentencing Guidelines Manual § 4B1.2 cmt. n.2 (U.S. Sentencing Comm'n 1992); *United States v. Williams*, 892 F.2d 296, 304 (3d Cir. 1989), *superseded on other grounds*, U.S. Sentencing Guidelines Manual § 4B1.2 cmt. n.2; *United States v. Blannon*, 836 F.2d 843, 845 (4th Cir. 1988); *Jackson*, 835 F.2d at 1197; *Thomas v. United States*, 602 A.2d 647, 651-52 (D.C. 1992); *State v. Norton*, 949 S.W.2d 672, 678 (Mo. Ct. App. 1997); *State v. Fulks*, 173 S.E. 888, 889 (W. Va. 1934).

common.  Neither Graves nor the majority, therefore, can shoulder the burden of rebutting the presumption that the 2004 amendment effected a "substantive change in law," *Bruhn*, 264 Va. at 602, 570 S.E.2d at 869 (citation omitted), by replacing a fixed term of imprisonment with a mandatory minimum term of imprisonment.

## II.  THE USE & MISUSE OF LEGISLATIVE HISTORY

Conceding that the text of the statute does not establish a maximum term of imprisonment, the majority infers from the statute's legislative history that the omission is a forgivable oversight on the General Assembly's part.  *See ante* at 5-10.  I have two responses.  First, that inference does not stem from a proper use of legislative history; second, it is a tenuous and speculative inference at best.

### A.

As to the first point, I agree that legislative history has a place in statutory interpretation.  I also believe, however, that it should be kept in its place.  *See generally* 2A Norman J. Singer & Shambie Singer, Sutherland's Statutes and Statutory Construction § 48:1, at 551-54 (7th ed. rev. 2014).  A textually clear statute needs no judicial construction of any kind, whether based upon legislative history or otherwise.  *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 29 (2012) (noting that even "cases approving the use of legislative history . . . *disapprove* of it when the enacted text is unambiguous" (emphasis in original)).

Virginia courts turn to a statute's legislative history only when the statutory text is ambiguous — that is, when there are multiple, equally reasonable, ways to interpret the command or prohibition.  As we have previously emphasized:

> Language is ambiguous if it admits of being understood in more
> than one way or refers to two or more things simultaneously. . . .
> If language is clear and unambiguous, there is no need for
> construction by the court; the plain meaning and intent of the

19

enactment will be given it. When an enactment is clear and unequivocal, general rules for construction of statutes of doubtful meaning do not apply. Therefore, when the language of an enactment is free from ambiguity, resort to legislative history and extrinsic facts is not permitted because we take the words as written to determine their meaning. And, when an enactment is unambiguous, extrinsic legislative history may not be used to create an ambiguity, and then remove it, where none otherwise exists.

*Brown v. Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985) (citations omitted).

This point has been a mainstay of our jurisprudence. *See Doss v. Jamco, Inc.*, 254 Va. 362, 370, 492 S.E.2d 441, 446 (1997) ("In the absence of ambiguity, . . . resort to . . . legislative history . . . is impermissible."); *Carter v. City of Norfolk*, 206 Va. 872, 876, 147 S.E.2d 139, 142 (1966) ("The language of the act being unambiguous, there is no occasion to resort to legislative history . . . ."); *City of Portsmouth v. City of Chesapeake*, 205 Va. 259, 269, 136 S.E.2d 817, 825 (1964) ("[T]he plain meaning of a statute cannot be affected by resort to its legislative history."); *Commonwealth v. Rose*, 160 Va. 177, 181, 168 S.E. 356, 357 (1933) (noting that "[t]he history of legislative dealings" is "interesting but has no value except in doubtful cases"); *Shenandoah Lime Co. v. Governor of Va.*, 115 Va. 865, 870, 80 S.E. 753, 754 (1914) ("[T]he motives, purposes or intention of the legislature have no existence in law where its enactment is plain and unambiguous on its face, except as those motives may be disclosed on the face of the act itself.").[5]

---

[5] *See also NLRB v. SW Gen., Inc.*, 580 U.S. ___, ___, 137 S. Ct. 929, 942 (2017) ("The text is clear, so we need not consider this extra-textual evidence."); *Milner v. Department of the Navy*, 562 U.S. 562, 572-74 (2011) ("Those of us who make use of legislative history believe that clear evidence of congressional intent may illuminate ambiguous text. We will not take the opposite tack of allowing ambiguous legislative history to muddy clear statutory language. . . . Legislative history, for those who take it into account, is meant to clear up ambiguity, not create it."); *Davis v. Michigan Dep't of the Treasury*, 489 U.S. 803, 808 n.3 (1989) ("Legislative history is irrelevant to the interpretation of an unambiguous statute."); *Burlington N. R.R. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 461 (1987) (finding the legislative history "inconclusive

The majority vaults the ambiguity hurdle by focusing not on Code § 18.2-53.1, the statute we must interpret, but on Code § 18.2-14. *See ante* at 5. That general statute states that sentencing courts must punish unclassified felonies "according to the punishment prescribed in the section or sections thus defining the offense." Code § 18.2-14. This correct but circular observation, however, adds nothing to the analysis. Code § 18.2-53.1 enacts an unclassified felony. So, under Code § 18.2-14, we look solely to Code § 18.2-53.1 (rather than the classifications in Code § 18.2-10) to determine the sentence to be imposed. But this conclusion tells us nothing about what Code § 18.2-53.1 means by imposing a "mandatory minimum term of imprisonment," and it certainly does not tell us that "minimum" also means "maximum." Code § 18.2-14 thus begs, but does not answer, the question before us.

Along the same lines, I see no interpretative relevance to Code § 18.2-12.1, which merely states what we already know: A sentencing court cannot suspend the mandatory minimum terms of imprisonment in Code § 18.2-53.1 either "in full or in part." Code § 18.2-12.1. A sentencing court can, and often does, suspend a sentence above the minimum. If the definition of "mandatory minimum" in Code § 18.2-12.1 proves that the expression "mandatory minimum" also means "mandatory maximum," that definition would be in conflict with a myriad of statutes imposing a non-suspendable "mandatory minimum" term of imprisonment while simultaneously

---

and irrelevant" because "[l]egislative history can be a legitimate guide to a statutory purpose obscured by ambiguity, but 'in the absence of a "clearly expressed legislative intention to the contrary," the language of the statute itself "must ordinarily be regarded as conclusive,"'" and "[i]n the present case, the language of [the statute] plainly declares the congressional purpose" (citation omitted)); *United States v. Oregon*, 366 U.S. 643, 648 (1961) ("Having concluded that the provisions of [the statute] are clear and unequivocal on their face, we find no need to resort to the legislative history of the Act."); *Caminetti v. United States*, 242 U.S. 470, 490 (1917) ("[W]hen words are free from doubt they must be taken as the final expression of the legislative intent, and are not to be added to or subtracted from by considerations drawn from . . . reports accompanying their introduction, or from any extraneous source.").

authorizing a suspendable maximum term. *See supra* note 1.

Legislative history should never be a basis for judicially amending a statute to supply a term that a court believes the legislature left out, regardless of how obvious the oversight or how clear the legislative history. *See United States v. Wells*, 519 U.S. 482, 496-97 (1997) (declining to rely on the "Reviser's Note," which stated that the amendments to the statute "[were] without change of substance," because the "indication" that those "who prepared the legislation either overlooked or chose to say nothing" about removing a term from 3 of 13 consolidated statutes "does nothing to muddy the ostensibly unambiguous provision of the statute as enacted by Congress" and because "[i]n any event, the revisers' assumption that the consolidation made no substantive change was simply wrong" (citations omitted)); Scalia & Garner, *supra*, at 256-60 (noting that "[t]he new text is the law" and that the changed language governs "even when the legislative history consisting of the codifiers' report expresses the intent to make no change").

The majority's reasoning, however, effectively amends Code § 18.2-53.1. Declaring the omission of a maximum term "anomalous," *ante* at 3, 5, the majority digs into the statute's legislative history and supplies the missing statutory term. The phrase "mandatory minimum term of imprisonment," Code § 18.2-53.1, is not truly being interpreted. Instead, the majority has judicially edited the phrase to *add* a new term so that, for all practical purposes, the statutory phrase now reads "mandatory minimum $_\wedge$ *and maximum* $_\wedge$ term of imprisonment." I do not believe that legislative history, even when understood with confidence, gives courts the power to amend statutes. "Courts are not at liberty to speculate upon the intentions of the legislature where the words are clear, and to construe an act upon their own notions of what ought to have been enacted." Sutherland, *supra* note 3, §§ 235-36, at 311-12.

22

B.

I am also unconvinced by the majority's understanding of the legislative history surrounding the 2004 amendment to Code § 18.2-53.1. Nothing in the recommendations of the Virginia State Crime Commission suggests that the phrase "mandatory minimum," standing alone, also includes a maximum. *See* Virginia State Crime Comm'n, *The Reorganization and Restructuring of Title 18.2*, House Doc. No. 15, at 5 (2004). If anything, the legislative history shows just the opposite of what the majority assumes. During the 2004 session, the General Assembly defeated two bills that would have amended Code § 18.2-53.1 but left intact the prior language mandating *fixed* terms of imprisonment. *See* H.B. 377, Va. Gen. Assem. (Reg. Sess. 2004); H.B. 1053, Va. Gen. Assem. (Reg. Sess. 2004). Taking a different approach, the General Assembly replaced the fixed terms of the pre-2004 version of Code § 18.2-53.1 with new "mandatory minimum" terms of imprisonment. 2004 Acts ch. 461, at 674.

The majority also turns to the Virginia Criminal Sentencing Commission's failure to prepare a fiscal impact statement to accompany the 2004 amendment as an "additional clue" supporting its argument that the phrase "mandatory minimum" in the 2004 amendment also includes the maximum sentence. *See ante* at 8-9 (citing Code § 30-19.1:4(A)). This argument, it seems to me, is the weakest of all. Probably for this reason, neither party made it at oral argument or on brief. I think the reason why neither party made this argument is because the interpretative "clue," *ante* at 8, is really nothing more than a speculative guess.

Truth be told, none of us can explain the absence of a fiscal impact statement for the 2004 amendment to Code § 18.2-53.1. The Criminal Sentencing Commission may have simply misread the proposed amendment and, as a consequence, neglected to prepare a fiscal impact statement. Perhaps those charged with scoring the fiscal impact relied upon the State Crime

23

Commission Report and did not realize that the recommendations in the report addressed only 19 of the mandatory minimum statutes needing amendment and conspicuously omitted any mention of Code § 18.2-53.1. *See* Virginia State Crime Comm'n, *supra*, at 37-38. Maybe this specific funding issue got lost in the General Assembly's decision in 2004 to build two new state prisons at a cost of over $140 million. *See* 2004 Acts ch. 4, at 493 (Spec. Sess. I) (effective July 1, 2004). A year later, in 2005, the General Assembly authorized the Department of Corrections to "develop a plan" to "finance, construct and operate additional correctional facilities." 2005 Acts ch. 951, at 2281-82 (effective May 4, 2005). I do not know what to make of these budgeting and appropriation decisions. But I do know what not to make of them. Whatever their plausible explanations, none persuade me to interpret "minimum" in Code § 18.2-53.1 to mean anything other than minimum.

## III. STATUTORY ABSURDITIES

I do not deny that textualism has its limits. We should not adopt a literal reading of a statute when such an interpretation "would result in a manifest absurdity." *Butler v. Fairfax Cty. Sch. Bd.*, 291 Va. 32, 37, 780 S.E.2d 277, 280 (2015) (citation omitted).[6] That said, "the anti-absurdity principle — understood in its legal sense — serves only as an interpretative brake on irrational literalism. This fail-safe applies in situations in which a purely literal reading forces the statutory text into an 'internally inconsistent' conflict or renders the statute 'otherwise incapable of operation.'" *Tvardek*, 291 Va. at 280, 784 S.E.2d at 285-86 (quoting *Butler*, 291 Va. at 37, 780 S.E.2d at 280).

---

[6] The majority never invokes the anti-absurdity principle, at least by name. Instead, it accomplishes the same result by deeming the statute "anomalous." *See ante* at 2 ("Code § 18.2-53.1 is an anomaly."); *ante* at 3 ("Code § 18.2-53.1 is anomalous . . . ."); *ante* at 5 ("Legislative history explains the anomalous language of Code § 18.2-53.1.").

24

A literal interpretation of Code § 18.2-53.1 — one that interprets "minimum" to mean minimum, not maximum — cannot be dismissed as a manifest absurdity. No court has ever suggested as much. To be sure, every case in the nation of which I am aware that has addressed this issue (except the divided Court of Appeals panel in *Hines*) has held that minimum means minimum, not maximum. *See supra* at 16-19 & n.4. Nor can we say that a life sentence would never under any conceivable circumstances be appropriate under this statute. The "mandatory minimum" term of Code § 18.2-53.1 applies to various felons, including murderers and rapists who use firearms to kill, maim, or torture their victims. I see no manifest absurdity in imposing life imprisonment upon a recidivist murderer or rapist who uses a firearm to accomplish his crime. Imposing such a sentence is not absurd simply because the murderer or rapist also deserves an equal punishment for the underlying predicate felony.[7]

As for the conjectural possibility that a judge could impose a life sentence upon an undeserving criminal, I am content to rely on the good judgment of our trial judges to avoid such immoderate results. The fact that life sentences are "rarely, if ever, imposed" in felony-firearm cases, *United States v. Stewart*, 628 F.3d 246, 258-59 (6th Cir. 2010) (citation omitted), demonstrates that this trust is well placed.

## IV. *HINES* & THE COMMONWEALTH'S CONCESSION

When this issue arose in *Hines*, the Commonwealth conceded that, "while perhaps not what the General Assembly intended for violators of Code § 18.2-53.1, . . . . [I]t appears that the only sentence available for a first conviction under Code § 18.2-53.1 is three years in prison."

---

[7] Consider the counter-absurdity of capping the sentence of a murderer or rapist who *uses* a firearm in committing his crime at three years' imprisonment (under the majority's interpretation of Code § 18.2-53.1) while capping the sentence of a defendant convicted of possessing of a drug with intent to distribute who merely *possesses* a firearm, *without using it*, at five years, *see* Code § 18.2-308.4(C).

25

Appellee's Br. at 14-15, *Hines*, 59 Va. App. 567, 721 S.E.2d 792 (Record No. 0228-11-2) (emphasis omitted). The Commonwealth's brief in *Hines*, however, admitted that "Hines, in essence, is asking this Court to *rewrite* the sentencing portion of § 18.2-53.1 by effectively *ignoring* the term 'minimum' in the present statute." *Id.* at 13 (emphases added). "Had the General Assembly intended the 'mandatory minimum' sentence of three years to be both the minimum and maximum term of imprisonment . . . , it simply would have left the three year sentence to be 'mandatory' instead of amending the statute in 2004 to add the term 'minimum.'" *Id.*

The Commonwealth in *Hines* also pointed out that the Court of Appeals, in an unpublished opinion regarding another statute, held that "[t]he plain, obvious, and rational meaning of 'mandatory minimum fine of $1,000' is that the trial court or jury has the discretion to impose a pecuniary punishment greater than $1,000, and nothing in the statute supports a different conclusion." *Id.* at 12 (emphasis omitted) (quoting *Neria v. Commonwealth*, Record No. 3088-07-4, 2009 Va. App. LEXIS 136, at *10 (Mar. 24, 2009) (Elder, J.) (unpublished), *aff'd*, Record No. 090813, 2010 Va. LEXIS 300, at *1-4 (Feb. 19, 2010) (unpublished)).

Despite these observations, the Commonwealth nevertheless encouraged the Court of Appeals panel to accept Hines's invitation to "rewrite" the statute, "effectively ignoring" its plain language. *Id.* at 13. Having convinced 2 of 15 active and senior judges on the Court of Appeals that this approach was consistent with Virginia law, the Commonwealth now relies on *Hines* as settling the matter for all time. For two reasons, I am unwilling to accept either the Commonwealth's concession or the split decision in *Hines* as persuasive.

First, "an 'issue which is a question of law is not subject to a concession binding on this Court.'" *Virginia Marine Res. Comm'n v. Chincoteague Inn*, 287 Va. 371, 389, 757 S.E.2d 1, 10

(2014) (alterations and citation omitted). "An issue of statutory interpretation is a pure question of law which we review de novo." *Manu v. GEICO Cas. Co.*, 293 Va. 371, 378, 798 S.E.2d 598, 602 (2017) (alteration and citation omitted). I consider it a given that, when exercising this review, a Virginia court should reject any litigant's invitation to rewrite a statute in an admitted effort to ignore its plain language.

Second, the Commonwealth's position in *Hines* prevented that case from being appealed to this Court from the Court of Appeals. After the Commonwealth conceded the issue, there was no aggrieved litigant to appeal the case to our Court or, for that matter, to file a petition for rehearing en banc with the Court of Appeals. This truncated appellate review, based upon an ambivalent concession and resulting in a split panel decision that was never tested by any further rehearing or appeal, leads me to one conclusion: Any persuasive precedential value that *Hines* might have is, at best, inconclusive. We thus should do in this case what appellate courts are designed to do — review de novo a lower court decision on a pure question of law. If we were to apply the winnowing fork of de novo review to this case, *Hines* would never make it to the threshing floor.

## V. CONCLUSION

The plain wording of Code § 18.2-53.1 establishes a mandatory minimum term of imprisonment — not a mandatory maximum. Because the statute sets no upper limit to the potential term of imprisonment, there is no statutory limit. In this case, therefore, the trial court did not err by imposing a five-year sentence, with two years suspended, for Graves's violation of Code § 18.2-53.1.

27